NEW MEXICO *v.* UNITED STATES TRUST COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 169.   Resubmitted April 17, 1899. — Decided May 15, 1899.

The provision in the act of July 27, 1866, c. 278, exempting from taxation the right of way granted to the Atlantic and Pacific Railroad Company, does not operate to exempt the right of way when acquired from private owners and not from the United States; and the judgment in this case made at this term and reported on page 186 of 172 U. S., having been made under a mistake of facts, is modified to that extent.

The assessments on the superstructures, on so much of the right of way as was taxable, were not assessments of personal property, but were clearly assessments of real estate; and the fact that the improvements were designated by name, and some of them given a separate valuation, did not invalidate their assessment as real estate.

THE statement of the case will be found in the opinion of the court.

*Mr. F. W. Clancy* for appellant.

*Mr. C. N. Sterry, Mr. E. D. Kenna* and *Mr. Robert Dunlap* for appellees.

MR. JUSTICE MCKENNA delivered the opinion of the court.

1. This case was submitted with No. 106, which was between the same parties, and on the authority of the opinion in that case the judgment of the Supreme Court of the Territory was affirmed.   172 U. S. 171, 186.

The cases were argued together, and it was supposed involved identically the same questions dependent upon a statement of facts which were stipulated.   No distinction between the cases

was indicated in the oral argument, and a reference of a few lines in a brief of thirty-five pages was overlooked.

In the petition for rehearing our attention was called to the fact that there is a substantial difference between the matters involved in this cause and those arising in No. 106. The difference is this: In 106 the right of way was in Bernalillo County through land which was public domain, whilst in this case the right of way is in Valencia County across the public domain for 33 miles only, and for 66.7 miles over land which was held in private ownership at the time of the grant to the railroad by the act of 1866. In other words, the railroad company derived its right of way for 33 miles in Valencia County under section 2 of the act of July 27, 1866, and to 66.7 miles under the power conferred by section 7 of said act. This difference was not adverted to in No. 106, and we will now consider the effect of it. In the opinion in 106 we said:

" The right of way is granted to the extent of two hundred feet on each side of the railroad, including necessary grounds for station buildings, workshops, etc. What, then, is meant by the phrase, ' the right of way ' ? A mere right of passage, says appellant. *Per contra*, appellee contends that the fee was granted, or, if not granted, that such a tangible and corporeal property was granted, that all that was attached to it became part of it and partook of its exemption from taxation.

" To support its contention appellant urges the technical meaning of the phrase, ' right of way,' and claims that the primary presumption is that it was used in its technical sense. Undoubtedly that is the presumption, but such presumption must yield to an opposing context, and the intention of the legislature otherwise indicated. Examining the statute we find that whatever is granted is exactly measured as a physical thing, not as an abstract right. It is to be two hundred feet wide and to be carefully broadened, so as to include grounds for the superstructures indispensable to the railroad."

After further consideration of what was granted, we also said: " The interest granted by the statute to the Atlantic and Pacific Railroad Company therefore is real estate of corporeal quality, and the principles of such apply. One of these, and

an elemental one, is that whatever is erected upon it becomes part of it." And we concluded that not only the right of way was exempt, but all its superstructures were exempt. But our conclusion was expressly based on the terms of the statute, and we took care to affirm the rule of construction which had been announced many times and in many ways, that the taxing power of the State is never presumed to be relinquished unless the intention be expressed in terms too clear to be mistaken. If a doubt arise as to the intention of the legislature, that doubt must be solved against exemption from taxation.

Applying this rule to the act of July 27, 1866, c. 278, the exemption from taxation must be confined to the right of way granted by the United States by section 2 of the act, and to the superstructures which become a part of it, and not to the right of way which the railroad company may have acquired under section 7, or independently of that section. Section 1 creates the corporation and authorizes it to construct and maintain a continuous railroad and telegraph line from and to certain points, and invests the company with the powers, privileges and immunities necessary to effect that purpose. Section 2 provides: "That *the right of way* through the public lands be, and the same is hereby granted, to the said Atlantic and Pacific Railroad Company . . . for the construction of a railroad and telegraph line as proposed. . . . Said way is granted to said railroad to the extent of one hundred feet in width on each side of said railroad where it may pass through the *public* domain, . . . and *the right of way* shall be exempt from taxation within the Territories of the United States." 14 Stat. 292.

The right of way which is granted and the right of way which is exempt from taxation is precisely identified by the natural and first meaning of the words used and their relations. It would require an exercise of construction to extend the exemption, and even if there are reasons for it, there are certainly reasons against it, and in such conflict the rule requires that the latter shall prevail.

2. It is contended by the appellee that the assessment was invalid because the laws of the Territory required the assess-

ment of the right of way and its superstructures to be made
as an entirety.

The contention is technical. It is not complained that the
valuation of the superstructures was excessive, but that they
were assessed as personal property, and hence invalidly
assessed, because by the laws of the Territory the term "real
estate" includes lands to which title has been acquired and
improvements, and the term "improvements" includes all
buildings, structures, fixtures and fences erected upon or fixed
to land, whether title has been acquired or not.

The record does not afford the means of judging of the
contention as clearly as might be wished, but we think it is
not tenable.

The intervening petition, which is the basis of the proceed-
ings, proceeds upon the ground that omissions were made in
assessments of property to the railroad company for a series
of years beginning with the year 1892 and ending with 1896,
and that additions were made of said property under the laws
of the Territory for said years. The valuation of the property
and the taxes levied against it are stated, and a description of
the property is attached.

It is alleged that the receiver of the company refuses pay-
ment because he claims that the property is exempt from tax-
ation under the act of July, 1866; but it is also alleged "that
the said exemption from taxation extends only to the right
of way granted to said railroad company on each side of its
railroad where it may pass through the public domain, and
does not extend to any improvements made upon the right of
way, nor to the said right of way itself where it passes through
land not included in the public domain."

It is prayed that "the said taxes, so levied as aforesaid,"
be declared a lien on the property in the hands of the receiver,
and that he be ordered "to pay the said taxes." General re-
lief is also prayed.

To the petition of intervention the receiver submitted pleas
respectively to the claim of taxes for each of the years. The
pleas were substantially alike, and alleged the assessment of
the company's property for each of the years, with a descrip-

tion or designation of 'it, the value at which it was assessed, and the taxes levied against it and the amounts of taxes paid by the company.

In the first plea it is alleged that the company through its officers made a return to the county assessor of its property situated in the county, and a copy of the return is attached and made part of the plea. Discriminating the property upon which the taxes were paid and that in the return of the company and assessed, the plea alleges:

" That the other property returned by the taxing officers of said railroad company for said year was and is the property upon which the taxes are paid as above stated, and as shown by Receiver's Exhibits 3 and 4.

" That the only pretended or claimed levy of taxes against any property of the Atlantic and Pacific Railroad Company for the said year, remaining unpaid, is that shown to have been extended and levied upon the 'right of way' of the Atlantic and Pacific Railroad Company, which was and is assessed at the lump sum of $327,103, upon the assessment roll for said year, together with the further sums placed in said assessment roll in the column headed 'Value of cattle,' opposite the words contained in the column in said assessment roll headed 'Name of property owners,' save and except as hereinafter stated.

" The names and sums referred to are as follows:

| | |
|---|---:|
| Rio Puerco, 1st | $1888 00 |
| El Rito, 3d | 541 00 |
| Laguna, 4th | 677 00 |
| Cubero, 6th | 2145 00 |
| McCarty's, 7th | 682 00 |
| Grants, 8th | 1383 00 |
| Blue Water, 9th | 3150 00 |
| San Jose, 2d | 1316 00 |

" All of which is shown by the said assessment and levy of taxes upon said assessment roll, as will fully appear by reference to said Receiver's Exhibits No. 1 and No. 2, and the indorsements thereon.

"That prior to the first day of January, 1894, the Atlantic and Pacific Railroad Company paid each and every item of taxes assessed and levied against it or its property in said Valencia County, Territory of New Mexico, save and except only that levied against the assessed value of its 'right of way,' and that levied against the figures set opposite the names of the stations as hereinabove set forth and described."

The right of way, therefore, was assessed in 1892, and whatever taxes were due on it or any part of it were left delinquent.

As to the other years the record is not much less definite. It appears that the right of way was assessed and the taxes levied against it were not paid. In all the pleas there is a careful allegation of payment of the taxes which were conceded to be valid, and as careful a one that the company refused "to pay the balance of the taxes because of the fact that the assessment as made by the assessor was an assessment of the right of way and station grounds of the Atlantic and Pacific Railroad, which were and are exempt under the act of Congress creating said railroad company." It is manifest that the right of way was assessed and the taxes were delinquent. In what manner were the additional assessments made? It is shown in the exhibit to the intervening petition. We select the assessment for 1892. The assessments for the other years are the same, the amounts only being different to a small extent.

"The following was omitted in the assessment of the year 1892, and was not put upon the assessor's book, and is now, in accordance with the provisions of sections 2847 and 2848, here listed, valued and assessed by the collector:

The cross ties, rails, fish plates, bolts, spikes, bridges, culverts, telegraph line and other structures erected upon the right of way of the Atlantic and Pacific Railroad Company in the county of Valencia, and constituting 'improvements' upon the land embraced within said right of way where same runs over what was public domain of the United States when said right of way was granted to said company, 33 miles in length, valued at $6500 per mile...................................... $214,500

Also the cross ties, rails, fish plates, bolts, spikes, bridges, culverts, telegraph line and other structures erected upon the right of way of the Atlantic and Pacific Railroad Company in said county of Valencia, and constituting 'improvements' upon the land embraced within said right of way where it runs over land which was held in private ownership at the time of the grant of said right of way to said railroad company, 60.7 miles, valued at $6500 per mile...................... $394,550

Station houses, depots, switches, water tanks and all
    other improvements at Rio Puerco station....... $1,800
Station houses, depots, switches, water tanks and all
    other improvements at San Jose station......... 540
Station houses, depots, switches, water tanks and all
    other improvements at El Rito station.......... 600
Station houses, depots, switches, water tanks and all
    other improvements at La Guna station......... 2,100
Station houses, depots, switches, water tanks and all
    other improvements at Cubero station.......... 600
Station houses, depots, switches, water tanks and all
    other improvements at McCarty's station....... 1,300
Station houses, depots, switches, water tanks and all
    other improvements at Grant's station.......... 3,100
Station houses, depots, switches, water tanks and all
    other improvements at Blue Water station...... 1,300
                                        $11,340 "

The assessments were not, as contended by appellee, of personal property. They were clearly of real estate; and because the improvements were designated by name and some of them given a separate valuation, did not invalidate their assessment as real estate. It was mere description, which did not change the essential or legal character of the superstructures.

It follows from these views that —

    *The judgment of the Supreme Court of the Territory must be reversed and the cause remanded for further proceedings in accordance with this opinion.*