[853-854.   August 23, 1900.]

## THE UNITED STATES TRUST COMPANY OF NEW YORK et al., Appellants and Cross-Appellees, v. THE TERRITORY OF NEW MEXICO, Appellee and Cross-Appellant.

SYLLABUS BY THE COURT.

1.  TAXATION—RIGHT OF WAY.—The righ.. of way and the improvements thereon on that portion of the Atlantic & Pacific Railroad Company running through the Territory over what was not public domain on July 27, 1866, is liable to taxation.

2.  COLLECTOR OF TAXES—TAX LISTS—PROPERTY OMITTED FROM.—A collector of taxes in a county after the tax lists have been delivered to him, when he ascertains that any real estate or personal property then in his county, has been omitted from the list, can list, value and assess such property in the same manner that the assessor might have done; enter such assessment in his tax lists and extend the levy of tax as against such assessment.

3.  INTERVENTION FOR TAXES.—Under section 649, Compiled Laws of 1897, an attorney employed as special counsel by a county to bring suit for delinquent taxes, is authorized to file an intervening petition in the name of the Territory.

4.  NOTICE OF CLAIM FOR TAXES—LIABILITY OF PURCHASER.—The original suit being still pending, and the order confirming the sale of the railroad specifying that any taxes which may finally be adjudged to be a lien upon the property, should be a liability on the railroad, is sufficient notice to such purchasers, of a claim for taxes; and in an intervening petition, filed in the original suit to collect such delinquent taxes, the purchasers at such sale need not be made parties thereto.

5.  ASSESSMENT—WHEN VOID—WHEN SEPARABLE.—An assessment of property is void, when the valid portion of any of the tax can not be separated, but not so when it is separable; and when a railroad a part of which is taxable is assessed at a given sum per mile, when the number of miles taxable is ascertained, it is separable, and does not invalidate the assessment because it differs from the number of miles described in the original assessment.

6.  PLEAS IN BAR—PRACTICE.—When pleas in bar are pending and undisposed of, it is the better practice to first dispose of them before allowing a motion to dismiss to be filed.

7. COUNTIES—JUDGMENT AGAINST NOT OPEN TO COLLATERAL ATTACK. Before the passage of the so-called Bateman Act, chapter 42, Laws of 1897, judgments could be taken against a county for debts due by it for current expenses, where the total indebtedness of such county was not greater than that permitted by the act of Congress, approved June 30, 1886; and taxes could be legally levied to pay such judgments; and when a claim against a county is merged into a judgment, such judgment can not be collaterally attacked.

8. PENALTY FOR FAILURE TO RENDER TRUE LIST TO ASSESSOR—WHEN NOT RECOVERABLE.—When the penalty for the failure to render a true list of property is not made by the assessor or collector, it can not be recovered in a suit brought to recover delinquent taxes.

9. JUDGMENTS FOR TAXES—RATE OF INTEREST.—Judgments for the recovery of delinquent taxes due before the passage of chapter 22, section 34, Laws of 1899. bear interest at the rate of 6 per cent. per annum from the date of such judgment, and the taxes do not bear interest at the rate of 6 per cent. per annum from the date they became due.

*Appeal* from the District Court of Bernalillo county, Second Judicial District. Modified and Affirmed.

Facts stated in the opinion.

C. N. STERRY for appellants.

F. W. CLANCY for appellees.

E. L. BARTLETT of counsel.

MILLS, C. J.—The examination of this case has been most laborious. The transcript of record covers some five hundred and twenty pages; the several briefs filed by the appellants contained upwards of one hundred and sixty pages, and that of appellee and cross-appellant fifty pages. The appellant assigns thirty-three grounds of error, while the cross-appellant is content with the more modest claim of only nine. While we have carefully considered all of the errors alleged, by both the appellant and the cross-appellant, we will not treat each of them separately, but will only discuss such of them as we deem to be necessary to a proper determination of this case.

The facts necessary to an understanding of this case are

partially set out in case No. 852, Territory of New Mexico v. Santa Fe, Pacific Railroad Company, heretofore decided at this term of court; and while that was a case concerning the collection of taxes in Bernalillo county, the intervention in this case was filed in the same main suit as that, being for the foreclosure of the Atlantic & Pacific Railroad Company. We will therefore only add here such additional facts as appear to be necessary to make the case clear.

This is the third intervening petition mentioned in that case, and is for taxes claimed to be due for the years 1892 to 1896, inclusive, on additional assessments made by the Collector of Valencia county, on the improvements on the right of way of the Atlantic & Pacific Railroad Company in Valencia county.

The additional assessments set out that thirty-three miles of the right of way was over what was public domain of the United States when said right of way was granted, and 60.7 miles of the right of way was over land which was held in private ownership at the time of the grant of said right of way, which was made by Act of Congress, approved July 27, 1866.

On being taken to the Supreme Court of the United States, the decree of the Territorial Supreme Court, declaring the tax as illegal was affirmed (172 U. S. 186), but on rehearing, the judgment was reversed. New Mexico v. United States Trust Co., 174 U. S. 545.

We are bound in deciding this case by the mandate of the Supreme Court of the United States when it reversed and remanded it. That mandate was as follows: "The judgment of the Supreme Court of the Territory must be reversed and the cause remanded for further proceedings in accordance with this opinion."

We are equally bound by the findings of fact made by the United States Supreme Court as by its conclusions of law, and shall follow them unless it manifestly appears to us that the Supreme Court was misled in arriving at any of the facts. The additional assessments made by the collector were on 60.7 miles of road as being over land held in private ownership at the time of the grant to the railroad, while the Supreme Court

finds that 66.7 miles of said road were over such land. We think that the learned judge who heard this case below would have been perfectly justified in holding in accordance with the decision of the Supreme Court of the United States as to the number of miles of said road which were taxable, and he probably would have done so, but on the case coming back to the district court for further proceedings in accordance with the decision, an agreed statement of facts was signed by the counsel for the respective parties, by which it appears that only 55.5 miles of said railroad ran over lands held in private ownership at the time the grant was made by the Act of Congress. The trial judge therefore held, and we think properly, that only that portion of the railroad which actually ran over land held in private ownership at the time the grant was made was taxable, and he modified the decision of the Supreme Court of the United States to that extent, believing that that court must have been misled in making its finding, that 66.7 miles of the road ran over lands held in private ownership.

The appellant argues at great length that at the time the railroad was built it did not know that any of its right of way was over property held in private ownership. We do not, however, think that this makes any difference, as to the taxing of that part of the road which it was subsequently found was built over lands owned by private parties at the time of the making of the grant. What the charter of the road exempted from taxation was, "was the right of way through the public lands." Congress did not grant a right of way through any specific land, but only through the public domain. The charter to the railroad company gave nothing through the lands which had previously been confirmed by Congress. They had already been declared by that body not to be part of the public domain. Whatever may have been their previous title, whether good, bad or indifferent, Congress made a good title by its action in confirming them. Langdeau v. Haynes, 88 U. S. 221 ; U. S. v. Percheman, 7 Pet. 51.

TAXATION: right of way.

By the confirmation of the other grants by the Land Court created by Congress, since the authority to build the railroad was granted, our government has authoratively declared that it never had any title to the land embraced within them, or in other words it has declared that the private Spanish land grants,. which have been confirmed, were never a part of the public domain, as such confirmed grants were not a part of the public domain of the Republic of Mexico, at the time of the signing of the treaty of Guadalupe Hidalgo, having been previously conveyed or donated to private persons. Congress by the Act of 1866, did not undertake to grant any land except that which was the property of the general government, as to other land held in private ownership, it gave the company the right of eminent domain. The several private land grants through which the railroad runs, which have been confirmed either by Act of Congress, or by judgment of the Court of Private Land Claims, are not public lands ; they are owned by private individuals, and consequently the right of way over them is subject to taxation by the Territory, as Congress only exempts from taxation within the Territories, that part of the right of way which passes over public domain.

The Supreme Court of the United States says in New Mexico v. U. S. Trust Co., 174 U. S. 545, "Our conclusion was. expressly based on the terms of the statute, and we took care to affirm the rule of construction which had been announced many times and in many ways, that the taxing power of the State is never presumed to be relinquished unless the intention be expressed in terms too clear to be mistaken. If a doubt arise as to the intention of the Legislature, that doubt must be solved against exemption from taxation.

"Applying this rule to the act of July 27, 1866, c. 278, the exemption from taxation must be confined to the right of way granted by the United States by section 2 of the Act, and to the superstructures which become a part of it, and not to the right of way which the railroad company may have acquired under section 7, or independently of that section. Section 1 creates the corporation and authorizes it to construct and maintain a

continuous railroad and telegraph line from and to certain points, and invests the company with the powers, privileges and immunities necessary to effect that purpose.   Section 2 provides: 'That the right of way through the public lands be, and the same is hereby granted to the said Atlantic & Pacific Railroad Company..........for the construction of a railroad and telegraph line as proposed..........   Said way is granted to said railroad to the extent of one hundred feet in width on each side of said railroad where it may pass through the public domain..........and the right of way shall be exempt from taxation within the Territory of the United States.'   14 Stat. 292.

"The right of way which is granted and the right of way which is exempted from taxation is precisely identified by the natural and first meaning of the words used and their relations. It would require an exercise of construction to extend the exemption, and even if there are reasons for it, there are certainly reasons against it, and in such conflict the rule requires that the latter shall prevail."

We therefore hold that the right of way, and the improvements thereon, on 55.5 miles of the railroad in the county of Valencia was and is subject to taxation.

Appellant also makes objection to the assessments for the several years having been made by Solomon Luna, Collector of Valencia county, claiming that he as such collector had no right or authority to extend them on the tax rolls of Valencia county for the year 1896, for the several years, or to extend any levy of taxes against such assessment.   We can see nothing in this contention of the appellant.

*COLLECTION of taxes: tax lists: property omitted from.*

Section 4056 of the Compiled Laws of 1897, gives the collector of any county, after the tax list has been delivered to him, when he ascertains that any real estate or personal property, then in his county, are omitted from the tax list, to list, value and assess such property in the same manner that the Assessor might have done, and shall enter such assessment in his tax lists.

We think that on its face this statute shows the purpose

for which it was enacted. It was evidently the intention of the Legislature when it was passed, to provide a means by which any property which was overlooked by the Assessor when making up his tax lists, might be placed on the assessment roll by the collector when he ascertained that the omission had been made. The act is a reasonable and proper one, as the intention of our laws is that all property which is liable to taxation, shall bear its fair proportion and share of the public burdens.

It is idle to claim that the collector after having extended the assessment on the tax rolls had no right to extend any levy of taxes against such assessments, nor do we see any reason why the attachment of a typewritten paper containing the assessment to the tax list at the proper place is not entering the same on the tax roll. We think that it is.

One of the errors reserved by the appellant is that the court committed error in holding that Frank W. Clancy, Esq., had sufficient authority to authorize him to file the intervening petition in this case in the name of and on behalf of the Territory of New Mexico.

INTERVENTION for taxes.

We do not consider this point as well taken in view of the statutes on this subject. Section 4157 of the Compiled Laws of 1897, provides, that whenever in his judgment it may be proper, the attorney-general, district or county attorney, shall bring suit in the name of the Territory for the recovery of taxes which may be due, when the amount exceeds one hundred dollars.

From this statute it is apparent that all suits for the collection of taxes must be brought in the name of the Territory. There is no law so far as we are aware which permits this class of cases to be brought in the name of the county, or in any other name save that of the Territory. The bringing of this class of cases is of course a matter entirely within the control of the Legislature. It might designate any person to take charge of this class of litigation, and if it had not designated any one else then the contention of appellant would be well founded; but the Legislature did see fit to designate others, and the Legisla-

ture of 1897, by an act which appears as section 649 of the Compiled Laws of 1897, allowed the county commissioners of any county which might be interested in prosecuting any suit for the collection of taxes, to employ special attorneys and counsel, at a compensation not to exceed that named in the act. The act further provided that the employment should include all proceedings in the cause in the district and Supreme Court of the Territory, and on appeal or error from the Supreme Court of the Territory to the United States Court of Appeals or to the Supreme Court of the United States.

The agreed statement of facts shows that Mr. F. W. Clancy was employed as special counsel by the county commissioners of Valencia county, under this act, to prosecute this suit. The act provided that the employment should include all proceedings in the cause in the district and Supreme Court of the Territory as well as in the United States Court of Appeals and the Supreme Court of the United States. Surely the filing of the intervention was a part of the proceedings in the case and a very important part, as it began the litigation on which the remainder of the proceedings are based. The act of 1897, furthermore did not attempt to change in any manner section 4157 of the Compiled Laws of 1897, which provided that suits for the collection of taxes should be brought in the name of the Territory. We can see nothing in the contention of the appellant that the court committed error in allowing Mr. Clancy to file the intervening petition in the name of the Territory. To hold otherwise would in our opinion be putting a forced construction on the act of 1897, which was undoubtedly passed so that suits for the collection of taxes claimed to be delinquent might be vigorously prosecuted.

The amended motion to dismiss and the plea in abatement, are substantially based on the same grounds, and were filed by the appellant on the same day, to wit: September 27, 1897. Part of the grounds on which they were based we will now consider and those which relate to the right of Mr. F. W. Clancy to file the intervening petition in the name of the Territory we have already discussed.

The main groud on which both the motion to dismiss and the plea in abatement are based is that the receiver of the railroad was discharged on or about April 26, 1898, and since such discharge has had no funds in his hands to answer any judgment which might be recovered against him as receiver; that at the time of the filing of the intervening petition all of the property in the hands of the receiver had been sold and conveyed to third parties under a decree of court, and that the parties to whom the conveyance had been made had not been made parties to this proceeding, and that the claims and demands set out in the intervening petition had never been presented to the parties who purchased the property sold under the decree of foreclosure in this case or their assigns and that no notice was ever given to such purchasers or their assigns that any such claim or demand would be filed by the Territory in this case prior to the filing of the intervening petition herein, and that neither said purchasers nor their assigns ever refused any payment thereof upon any demand or otherwise, and that the United States Trust Company, at the time of the filing of the interplea had not and never since has had any interest in the subject matter of this intervening petition.

The authorities of Valencia county have been persistent in their efforts to collect the taxes which they claim are due from this railroad. They first filed an intervening petition as far back as June 4, 1894, in a suit brought by the Mercantile Trust Company of New York, in which suit receivers of the road were appointed, and apparently have ever since honestly endeavored to collect what they claimed was due their county, either in that case or in the present one.

It furthermore appears in the record and is uncontradicted, that at the time of the presentation to the court of the report of the foreclosure sale, when the confirmation of the same was asked for, and while at least two of the three purchasers of the property were present, Mr. Clancy stated that arrangements had been made for his employment by the counties of Bernalillo and Valencia to prosecute claims for taxes against the property sold and that at

his suggestion and with the assent of the purchasers the following words were inserted in the order confirming the sale: "Including also any taxes which may finally be adjudged to be a lien upon the property, and sold under the decree aforesaid."

It can not therefore be contended that the purchasers of the property sold under the decree of foreclosure did not have notice of the claim for taxes made by Valencia county, or that they took title to the property without knowing that such claim was to be made. The foreclosure sale took place May 3, 1897, and shortly after such sale the attorney for the appellants, who had been fighting the claims for taxes since the first attempt had been made to collect them some years before, was employed by the purchasers to attend to any pending or future litigation against the receiver; that service of the intervening petition was made at his office in Albuquerque on June 10, 1897, and a letter on the subject was mailed to him addressed at Los Angeles, Cal., on the same day; that on June 23, 1897, he filed pleas to the intervening petition and that ever since July 1, 1897, (that being the day the new company took possession of the property,) he has been in charge of all the legal business of that company in New Mexico. The statement made in both the motion to dismiss and the plea in abatement, that the receiver was discharged on or about April 26, 1898, is not borne out by the facts, as shown by the record; the record showing on page 181 that the said receiver was discharged October 4, 1898.

*Notice of claim for taxes: liability of purchaser.*

We can not agree to the proposition of the appellants that the parties to whom the railroad was sold should have been made parties to this proceeding, and we know of no way by which under the petition of intervention, the petitioner could have made them parties. This is a proceeding in rem, begun when the property was in the hands of the court, and any one receiving it from the court took it

cum onere. In addition to this the court at the time the order confirming the sale was filed, retained jurisdiction of the cause and reserved full power to retake and sell the property, if the purchasers, their successors or assigns, should fail to comply with any order of the court in respect to the payment of prior indebtedness, obligations or liabilities.

No one was injured by the manner in which the notice was given and it is evident that all of the parties in interest knew of the proceeding and that such of them as desired contested the same.

The making of the demand on the purchasers for the payment of these taxes would have been a useless formality, for both they and their predecessors and successors have always refused to pay them and have vigorously fought their collection and are doing so even at the present moment. If the purchasers of the property had desired to settle these taxes, they could have paid the money into court.

Furthermore, as late as December 19, 1898, on motion of the Santa Fe Pacific Railroad Company, an order was made by the court allowing creditors of the receivers, or of the Atlantic & Pacific Railroad Co., to file their claims with the clerk of the Second Judicial District Court, on or before October 23, 1899.

The motion to dismiss and the pleas in abatement having been overruled, the appellants filed demurrers to the petition of intervention, setting up various grounds, and a hearing being had the court sustained the demurrer as to the taxes levied on that portion of the right of way, and improvements thereon, in the county of Valencia, where the same runs over what was public domain of the United States when said right of way was granted to the Atlantic & Pacific Railroad Company, and also as to the taxes levied upon the several depots, station houses, etc. The court further reserved its decision until the final hearing of the case as to that part of the demurrer concerning that portion

of the intervening petition claiming interest to be due upon any of the taxes sought to be recovered, and overruled the demurrer as to the taxes levied on that portion of the right of way and the improvements thereon, where it runs over lands which were held in private ownership at the time of the grant of said right of way to the railroad.

This decision seems to us to be a proper one and is strictly in accord with the decision of the Supreme Court of the United States in the case of New Mexico v. United States Trust Company, 174 U. S. 545. These are the same assessments which went to the Supreme Court of the United States, when this case was there before, and that court then held that (at least some of) the objections to them were technical. We do not think that the additional objections raised by these demurrers are anything but technical.

An assessment of property is void, when the valid portion, if any, of the tax can not be separated, but not so when it is separable. This has been so held by the Supreme Court in People v. R. R. Co., 127 U. S. 1; Santa Clara v. R. R. Co., 118 U. S. 394. Appellant contends that if the assessment was made on 60.7 miles of road as running over private property, and there were only 55.5 of such miles, then the assessment is void. We do not think that is the law. When the assessment was made, appellants could have appealed, and they clearly had the right and the opportunity to do so. They did not do so, however. As before intimated in this opinion we think that the Judge would have been justified in view of the finding made by the Supreme Court in New Mexico v. U. S. Trust Co., 174 U. S. 545, in holding against the railroad company for the taxes on 66.7 miles, instead of on the number of miles he did. It will be observed that the assessment is at the rate of $6,500 per mile; consequently there is not the least trouble in ascertaining the amount of the assessment. The rule of law, as above stated, is that

Assessment: when void: when separable.

an assessment of property is void, where the valid portion, if any, of the tax, can not be separated, but not so when it is separable. Part of this tax is clearly valid; that is, that part which is laid on the right of way when it runs over property which was held in private ownership at the time the grant to the railroad was made. The agreed statement of facts shows how many miles there were of such right of way, to wit, 55.5 miles, and multiplying this amount by the sum of $6,500, we arrive at the amount on which taxes should be levied for the several years, to wit, $360,750.00. We do not think that this is such error as would justify us in reversing and remanding this case, and if we did so we would do it with instructions to the court below to allow proper amendments to be made. Courts of equity regard substance, not form, and even at law a case will not be reversed where "the result is right although the manner of reaching it may have been wrong." Decatur Bank v. St. Louis Bank, 21 Wall. 301; Allis v. Life Ins. Co., 97 U. S. 145; Gregg v. Moore, 14 Wall. 569; Cannon v. Pratt, 99 U. S. 623; Hornbuckle v. Stafford, 111 U. S. 394. The valuation of $6,500 per mile was fixed by the Territorial Board of Equalization at a meeting held pursuant to law, and we do not think it excessive. No appeal was taken from this action fixing the valuation, and therefore the owners of the property are bound by it. Albuquerque Bank v. Perea, 5 N. M. 673; Albuquerque Bank v. Perea, 147 U. S. 89. This system of valuation is a proper one. R. R. Co. v. Backus, 154 U. S. 421.

After the demurrer was overruled a lengthy plea in bar was filed, which occupies some ninety printed pages of the transcript of record. This plea set out everything which had been included in the motion to dismiss, pleas in abatement and demurrers, and also sets up practically everything which could have been put in an answer. The

Pleas in bar:
practice.

learned judge, however, overruled it, and then an answer was filed and the cause went to a hearing on the agreed statement of facts, and on this hearing judgment was entered in favor of the Territory, and from the amount of this judgment and the interest charged thereon, appellants appealed and assigned error thereon, as did also the cross-appellant. We will consider these alleged errors relating to the amount of the judgment and the interest charged thereon later in this opinion, as those assigned by both parties can be considered together.

The first four errors assigned by the cross-appellant relate to errors alleged to have been committed by the court in permitting appellants, after the case was remanded, to file a motion to dismiss while pleas in bar were pending and undisposed of, and also in the withdrawal of the plea filed in June, 1897. Cross-appellant also alleges error in permitting appellees to file pleas raising the question as to the sufficiency of the assessments, and in denying the motion of the cross-appellant not to consider or admit in evidence the facts set out in the agreed statement of facts other than those specified and referred to in the statement in writing filed in the court below.

We think that no motion to dismiss after the case had been remanded from this court should have been permitted to have been filed until the pleas in bar then pending were disposed of. It certainly would have been the better practice to have first disposed of the pleas in bar, before allowing the motion to dismiss to be filed, but as the motion to dismiss was overruled, as well as the pleas in bar, we do not think that the cross-appellant suffered any injury which would be sufficient error to authorize us in reversing this case and sending it back to the lower court on this ground. If we did do so, the case would in all probability come back to us in very much the same shape it now is in, except that the pleas in bar would have been overruled before the motion to dismiss was filed. Neither the appellant, the

appellee nor the cross-appellant would be in any other or better position than they are in now.

We see no error in the court below having permitted the withdrawal of the pleas filed in June, 1897, and allowing a new plea to be substituted in its place. As we understand it the case of the Territory of New Mexico v. U. S. Trust Co., 174 U. S. 545, went to the Supreme Court on a plea. No answer, so far as the record before us shows, was filed by the appellant before the Supreme Court passed on the case. According to the old chancery practice an answer should have been filed with the plea. Our code of civil procedure was not in force at the time the intervention was filed. It did not go into effect until August 1, 1897, consequently it does not affect this plea.

The cross-appellant does not, however, seem to have taken advantage of this oversight. If the answer had been filed with the plea, then the whole matter in controversy might have been passed upon by the Supreme Court, but as it was not, it necessarily follows that only such matters were passed upon as were before it on the plea.

The decision of the Supreme Court was in effect, that the improvements on the railroad right of way were taxable when it ran over what was private property at the time the grant was made. We, therefore, think that the court was right in not allowing any more of the road to be taxed than that which was on private property, and which the stipulation now on file in the case shows was 55.5 miles. We think that the plea filed by the railroad company in 1897, estops it from denying that part of their road ran over such property.

As we understand the decision of the Supreme Court of the United States, it does not hold finally that the assessments made by the Collector of Valencia county were valid, but it did hold that "the assessments on the super-structures, on so much of the right of way as was taxable, were not assessments of personal property but were clearly assessments of real estate," and we, therefore, think that the

district court was clearly correct in allowing the pleas to be filed which raised the question of the validity of the assessments.

Cross-appellant also contends that the court committed error in refusing to hold that appellant was entitled to recover taxes on 60.7 miles of railroad, but we do not think that there is anything substantial in this objection, as the agreed statement of facts shows that only 55.5 miles of the road was over private property, and although the assessment was made on 60.7 miles it was made at the rate of $6,500 per mile, and when once the number of miles liable to taxation is ascertained, it is but a question of computation to determine what the amount is. It would be unjust to assess the railroad on more of its right of way and improvements thereon than were on lands held in private ownership.

The assignment that the cross-appellant was entitled to recover the full amount of the levies made by the authorities of Valencia county in each of the years from 1892 to 1896, inclusive, is we think of some merit. The court below found that a deduction of three mills should be made from the levy made for the year 1895, and six mills from the levy made for the year 1896. These levies were made for the payment of judgments recovered against the county, and were made in consequence of mandamus proceedings, and presumably have been collected from the other taxpayers of the county.

. Section 657 of the Compiled Laws provides that when a judgment is recovered against a county no execution shall issue, but that the judgment shall be paid by the levy of a tax, as other county charges. The argument is that these levies were based upon judgments for warrants issued in payment of ordinary county expenses, and that by section 4021 of the Compiled Laws, the county commissioners are limited as to the tax which they may levy for current county expenses. For just what county expenses they were issued does not appear. It may have been to

pay for keeping prisoners in jail, and unless it is shown by the record that at the time of their issuance the county of Valencia was in debt to a greater sum than is allowed by the Act of Congress, approved June 30, 1886, we think that they are a legal and valid claim against the county.

If previous to the passage of the so-called Bateman Act chapter 42, Laws of 1897, the intent of the Legislature was that no county could spend in any one year more than the amount limited by section 4021, why is any provision made for the collection of a tax to pay a judgment recovered against the county? Besides these claims having been merged into judgments are not subject to collateral attacks in proceedings brought to enforce the payment of taxes levied, and in proceedings such as this it is improper for the courts to go behind the judgment to ascertain upon what it was based for the purpose of preventing its payment. We think that there was error in this holding of the court disallowing these levies, but in view of the judgment which we propose to give in this case it will not be necessary to send the cause back to the court below for correction.

COUNTIES: judgment against: not open to collateral attack.

The remaining errors assigned both by appellant and the cross-appellant, we will consider together, as they relate to the interest the judgment should bear and as to whether or not the statutory penalty of twenty-five per cent. for each year when no return was made should be added, and also the date from which the judgment should bear interest.

First we will consider as to whether or not the Territory is entitled to recover the penalty of twenty-five per cent. of the amount of the taxes for failure to make returns of the property assessed by the collector. It appears from the record that no returns of the property sought to be taxed were made by any one for the years 1892 to 1896, inclusive. Section 4035 .of the Compiled Laws provides that if any person liable to taxation shall fail to render a

true list of his property, the assessor shall make out a list of the property of such person; and such person shall be liable in addition to the tax so assessed to the penalty of twenty-five per cent. which shall be assessed and collected as a part of the taxes of such person.

In the case at bar, no separate penalty was added by the Assessor. He assesses the property at the rate of $6,500 per mile, and adds to it no separate penalty of twenty-five per cent. or any other sum. In the intervention the petitioner asks for no judgment for any such penalty. The prayer of the intervention is for the payment of the taxes, together with interest thereon. Nothing is said about any penalty. We can not go outside of the amount of the assessment as made by the collector and add to it. We are not assessors. We must assume that the collector assessed the property fairly, and that in such assessment he put in all that the county and Territory were entitled to. The law reads that the person assessed shall be liable "to the penalty of twenty-five per cent., which shall be assessed, etc." This we think clearly makes it the duty of the assessor or collector to assess the penalty, if any, at the time he makes the assessment. If he does not do so we do not think that we could legally add to the sum fixed by him. His action is final, and the Territory can in our opinion recover in this suit, exclusive of interest, no greater amount than that for which the assessment is made. In any civil case the amount of the recovery can be no greater than that claimed in the ad damnum clause of a writ or declaration.

PENALTY for failure to render true list to assessor: when not recoverable.

Previous to the session of the Legislature held in 1899, the laws of this Territory were to the effect that all taxes which became delinquent should bear interest from the date of their delinquency at the rate of twenty-five per cent. per annum. The section which provided for this rate of interest was No. 4066 of the Compiled Laws. The Legislature at its January session in the year 1899, amended the

tax laws of this Territory and passed a new and stringent law to facilitate the collection of taxes. (Chapter 22, Session Laws of 1899). By this act section 4066 of the Compiled Laws was amended, so as to do away with the imposition of interest at the rate of twenty-five per cent. per annum, and provided for a penalty on taxes which were delinquent.

We regard the twenty-five per cent. interest to be charges against taxes which were delinquent, as being a penalty imposed by the Legislature to facilitate the payment of taxes, and not as a payment for the use of the money withheld by the delinquent taxpayer. We hold in accordance with many authorities that a statute repealing an earlier law imposing a penalty, without a reservation as to penalties already accrued, will operate to destroy all right to the recovery of such penalties, even in cases pending at the time of the repeal. Section 34 of chapter 22, Laws of 1899, also provides that "The time for the payment of all taxes now delinquent is hereby extended until May 1, 1899, and when the same may be in litigation at the date of the passage of this act until such litigation shall be determined." This law (chapter 22, Laws of 1899) was approved March 1, 1899, nearly two years after the filing of the petition of intervention on which this suit is based, so there can be no doubt that this claim was in litigation at the time of the passage of this act, and that consequently the imposition of interest at the rate of twenty-five per cent. per annum on the delinquent taxes was expressly waived.

We are aware that the same Legislature at a subsequent day, March 16, 1899, passed an act·known as chapter 52, Laws of 1899, by which it provided that all accrued penalties and interest on taxes delinquent should be remitted if they were paid by July 1, 1899, and furthermore provided "that in all cases where taxes are now the subject of litigation the time for such payment as aforesaid is extended only to the first day of July, 1899, and if not paid on or before such first day of July, no abatement of interest or penalties shall thereafter be made." Interest at the rate

of twenty-five per cent. per annum on delinquent taxes having been repealed by the amendment of section 4066, Compiled Laws, by sections 10 and 34 of chapter 22, Laws of 1899, and chapter 52 of the Laws of 1899, not having provided for any rate of interest, we do not see how we would be justified in holding that interest at the rate of twenty-five per cent. per annum could properly be charged on such of the taxes in controversy as were delinquent, as the law allowing interest at that rate, had been amended out of existence. At most it seems to us that the greatest extent to which we could go would be to charge interest at the statutory rate of six per cent. allowed in this Territory when no agreement is made for a greater rate.

Even if the statute allowing interest at the rate of 25 per cent. on delinquent taxes to be charged, had not been repealed, we would be loth to impose interest at this rate in this case, for the reason that there was a bona fide dispute as to the legality of the taxes levied, and no one before the judgment was rendered in this case by the learned judge below could have separated the legal from the illegal taxes, as until that decision the number of miles of the railroad liable to taxation was not known. In Minnesota, the statute authorizing the placing of back taxes on the assessment rolls provides "that interest shall be charged up against them from the time that such taxes should have become delinquent if placed on the roll." "The syllabi made by the Supreme Court in the case of the State v. Certain Lands in Redwood County, 42 N. W. Rep. 473, says: 'That the provisions of the act adding back interest to the tax is invalid, as being unequal taxation, for the reason that until the amount of the tax is ascertained the owner has no opportunity of paying it, and is not in default, and the person is chargeable with interest only, upon contract to pay it, or for some default of legal duty, on his part.'"

The court below held that the delinquent taxes should bear interest at the rate of 6 per cent. per annum from the respective dates when they became delinquent, i. e. one-half of the taxes levied and assessed under the levy made during

the year 1892, to bear interest at the rate of 6 per cent. per annum from the first day of January, 1893, and the other half thereof to bear interest at the same rate from the first day of July, 1893, and so on in like manner for each of the years for which the additional assessments were made. We think that this was error, and that interest should only have been charged from the date of the rendition of the judgment, to wit: October 5, 1899. In the case of in re Taxes in Hennepin County v. Baldwin, 65 N. W. 82, the court says:

"The sixth and last question is whether the delinquent taxes charged against this land bear interest, and, if so, at what rate, and from what date? A tax is not founded on contract or agreement. It operates in invitum. In its essential characteristics, it is not a debt or in the nature of a debt. Hence, while a debt bears interest from its maturity, a tax never bears interest, either as interest or as damages for its non-payment except by force of statute. This proposition is so elementary that the citation of authorities in its support can hardly be necessary. See, however, 1 Suth. Dam., Sec. 337; 1 Sedg. Dam. Sec. 332, and cases cited."

This we believe to be correct law. A tax operates in invitum, and unless provided for by statute will not bear interest from the time it becomes due. Our laws provide that judgments shall bear interest at the rate of 6 per cent. per annum, consequently we hold that the judgment in this case should only bear interest at that rate and from the date of its rendition, to wit: October 5, 1899.

This case has been before us before, and has been twice argued in the Supreme Court of the United States, and we desire to facilitate its determination at as early a day as possible. We have found two errors on which we might reverse and remand it, one relating to the deduction of the taxes levied for paying judgments, and the other relating to the charging of interest on the delinquent taxes from the dates they severally became due, instead of from the date of the judgment. The assessments

Judgments for taxes: rate of interest.

for each year appear in the record and the rate of taxation
for the several years are also there, consequently it is but clerical
work to figure what they amount to in each year, the tax be-
ing on 55.5 miles at $6,500 per mile.   It is as follows:

| Assessment for | Amount. | Rate. | Tax. |
|---|---|---|---|
| 1892.......................................... | $360,750 00 | .0219 | $7,900 43 |
| 1893.......................................... | 360,750 00 | .0375 | 13,528 12 |
| 1894.......................................... | 360,750 00 | .03675 | 13,257 56 |
| 1895.......................................... | 360,750 00 | .03675 | 13,257 56 |
| 1896.......................................... | 360,750 00 | .03875 | 13,979 06 |
|  |  |  | $61,922 73 |

Which sum of $61,922.73, bearing interest at the rate of 6
per cent. per annum from October 5, 1899, is the amount for
which we think the learned judge below should have given
judgment.   The judgment given by him in favor of the appel-
lee and cross-appellant was for the sum of $74,168.70, which
sum was arrived at by deducting the levies from the payment
of judgments of three mills in the year 1895, and six mills in
the year 1896, being the years referred to above by us, and
which from the record before us we think were legal, and by
charging interest at the rate of six per cent. per annum on the
delinquent taxes from the several dates they became payable to
the date of the judgment.   We think this judgment is excessive
on account of the manner in which interest is charged, but on
account of the delay which it would occasion we see no reason
to remand this case to the district court to have a judgment
entered in accordance with this opinion, as under section 3141
of the Compiled Laws of 1897, this court has power to "award
a new trial, reverse or affirm the judgment of the district court,
or give such other judgment as to them shall seem agreeable
to law."   The judgment of the district court is, therefore, modi-
fied and reduced to the sum of $61,922.73, which sum shall bear
interest at the rate of 6 per centum per annum from October
5, 1899, and as thus modified the judgment of the court below
is affirmed.

Parker and McFie, JJ., concur; Crumpacker, J., hav-
ing heard this case below did not participate in this opinion;
Leland, J., absent on account of sickness.