WASHINGTON CAMP NO. 23, OF THE STATE OF NEW JERSEY, PATRIOTIC ORDER SONS OF AMERICA, PROSECUTOR, v. THE BOARD OF EQUALIZATION OF TAXES OF NEW JERSEY AND THE TOWNSHIP OF PALMYRA, IN THE COUNTY OF BURLINGTON, RESPONDENTS.

Submitted December 3, 1914—Decided April 9, 1915.

1. The facts of this case *held* not to bring the prosecutor within the exemptions from taxation granted by paragraph 4 of section 3 of the Tax act of 1903, as amended in 1913. *Pamph. L., p.* 570.
2. An association or corporation whose objects are mainly benevolent in character, but are professedly, in part, at least, "patriotic," is not organized exclusively for benevolent purposes, so as to be entitled to exemption under said amended act.
3. An association partly social and partly benevolent in character cannot be said to be organized exclusively for benevolent purposes.
4. A building, part of which is used by a benevolent association for its lodge meetings, and part of which is rented out for mercantile purposes to business tenants, and the income applied by the association to its benevolent purposes, is not "actually used for" such association in the sense intended by said amendment of 1913, so as to be exempt from taxes. Its exemption depends upon its actual devotion to the benevolent work of the association and not on the application of the income received from rents to such work.

On *certiorari* to judgment of Board of Equalization of Taxes of New Jersey.

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *John G. Horner.*

For the respondents, *Herbert A. Drake.*

The opinion of the court was delivered by

PARKER, J. The question for decision is whether the prosecutor is entitled to have a three story brick building owned by it exempted from taxation. It derives an income from the store rentals of the first floor, from the use of an assembly hall on the second floor, and from renting out its own lodge room on the third floor. Its claim that this income producing property should be relieved from the ordinary annual tax that other business properties have to pay, is rested on the stipulated facts that prosecutor is a fraternal, benevolent organization; that its funds or the income thereof are wholly devoted to sick and death benefits and similar charity to families of deceased members; and that all net income from this building goes into such funds, which were originally created and are regularly augmented by dues from members.

The law applicable is the amended subdivision 4 of section 3 of the Tax act of 1903. *Pamph. L.* 1913, *p.* 570. The particular clause relied on is this: "All buildings actually used for colleges, schools, * * * associations and corporations organized exclusively for the moral and mental improvement of men or women, or for religious, charitable, benevolent or hospital purposes, or for one or more such purposes, not conducted for profit," &c.

Under the circumstances of this case, unless the property in question is a building actually used for a corporation organized exclusively for some charitable or benevolent purpose or purposes, and not conducted for profit, the exemption does not apply; for we do not understand that any other alternative of the statute is claimed to be applicable. We take the clause "not conducted for profit" to be applicable to the college, association, corporation, &c., and not to the building. This was unquestionably its relation in the act of 1903 (see *Stevens Institute* v. *Bowes*, 78 *N. J. L.* 205; *Institute of Holy Angels* v. *Bender*, 79 *Id.* 34; *Montclair* v. *State Board*, 86 *Id.* 497),

and the amendment of the act evinces no intention to make
the clause refer to the only other possible antecedent, viz.,
the building. But whether one or the other antecedent be
adopted, the exemption does not arise in this case unless two
things concur: *first,* the corporation must be organized exclu-
sively for some charitable or benevolent purpose, and *second,*
the corporation (or the building, according to the antecedent
selected) must be "not conducted for profit." We find it un-
necessary to consider whether either the corporation or the
building is "conducted for profit" in the sense intended by
the statute, because we conclude that the prosecutor is not
organized exclusively for benevolent or charitable purposes.
Its own certificate of incorporation declares that its "objects"
(plural) are patriotic in character, "and *in addition thereto*
to relieve such of the members thereof as shall by sickness,"
&c., be incapacitated. Just how the patriotic objects are to
be carried out does not appear; but it is plain that they
exist, and equally plain that they are not properly to be
classified as either benevolent or charitable, or otherwise em-
braced within the exemption. Moreover, the facts appearing
by stipulation, that the proceedings of the "camp" are ritual-
istic in character, and that its sessions are secret, give rise to
a fair inference that this body is also essentially social in
character. The constitution and by-laws would throw light
on this point, but we do not observe that they were put in
evidence. So far, therefore, from showing facts sufficient to
bring it clearly within the exemption, we think that in this
aspect prosecutor has shown that it is not within it.

There is another cogent reason for holding that the exemp-
tion does not apply, and that is that even conceding what we
have just denied, that the prosecutor is a corporation organized
exclusively for benevolent or charitable purposes, still the
building is not "actually used for" such corporation in the
sense intended by the statute. What is actually used is only
a part of the building, viz., the hall and lodge room at most.
The stores are not so used; they are rented out, and pre-
sumably at the same rate as if the prosecutor were a purely
business corporation. In our view "actual use" of a building

for a benevolent corporation means use in the benevolent work of that corporation, and not a hiring out in consideration of rentals, as by any other landowner. It is therefore the same as use by the corporation in its benevolent work, or perhaps by some agency to whom such work has been entrusted. At all events it is not the exploiting of the building or a substantial part of it, as a business proposition, which is the case here. The point is made clear by the distinction drawn in our cases between the exemption of land and the exemption of what the act calls "endowment or fund." In *Nevin* v. *Krollman,* 38 *N. J. L.* 574, the claim was that an endowment might consist of land, but the Court of Errors and Appeals held otherwise, though the land apparently consisted of vacant lots bringing no income. In *Cooper Hospital* v. *Camden,* 68 *Id.* 691, 704, the same court declared an endowment in the form of income-producing real estate taxable, and .emphasized the point (*pp.* 706, 707) that mere ownership of land by a charitable institution does not exempt the land, and that its exemption depends upon its actual devotion to the work of the charity.

We do not overlook the fact that the amendment of 1913, *inter alia,* changes the clause "actually and exclusively used" in the act of 1903 to read "actually used." As we view the matter the legislature by this elimination of the word "exclusively" did not mean to extend the exemption to cases of permanent partial occupancy of buildings for business or other non-charitable purposes, but to avoid claims that such exemption would be forfeited notwithstanding the actual *bona fide* use of the entire building for benevolent purposes, if occasional use were made of it for other purposes, as the loaning of the lodge room to other organizations temporarily deprived of their quarters, and so on.

For these reasons, and in view of the rule that tax exemptions are construed more strongly in support of the tax, we think the board of equalization properly decided that no exemption existed in this case, and its judgment will therefore be affirmed.