20 P.(2d) 280

**TEMPLE LODGE NO. 6, A. F. & A. M., v. TIERNEY, County Treasurer and Collector.**

**No. 3828.**

Supreme Court of New Mexico.

Feb. 15, 1933.

Joseph Gill, of Albuquerque, E. R. Wright, of Santa Fé, and H. B. Holt, of Las Cruces, for appellant.

A. L. Zinn and J. D. Mell, both of Santa Fé, and C. V. Clayton, of Tularosa, for appellee.

WATSON, Chief Justice.

Appellant, a Masonic Lodge incorporated under 1929 Comp. St. § 32-506, authorizing the organization of "a corporation for religious, benevolent, charitable, scientific or literary purposes, or for the establishment of colleges, academies, seminaries, churches or libraries," sues to enjoin collection of taxes assessed upon the Masonic Temple owned by it at Albuquerque. Its single contention is that said property is "used for educational or [and] charitable purposes," within the meaning of N. M. Const. art. 8, § 3, and is accordingly exempt from taxation.

The material findings may be thus summarized:

According to appellant's articles of incorporation, it is a fraternal, benevolent, and charitable corporation. The property assessed consists of certain lots, and the Masonic Temple thereon, consisting of lodge halls, clubrooms, offices, dining room, cloakrooms, etc., used as the meeting place for the members of appellant lodge, another Masonic Lodge, a chapter of Royal Arch Masons, a Commandery of Knights Templar, a Temple of the Order of Mystic Shrine, and for the organizations De Molay, Job's Daughters, Eastern Star, and White Shrine; the facilities of the building being primarily for the use of Freemasons and their families in which to carry on the functions, work and objects of Masonry.

Appellant issues no capital stock, declares no dividends; its members derive no pecuniary profits from its operation, and are guar-

anteed no benefits of any kind. Appellant's revenues come from $12 annual dues, paid by its approximately eight hundred members, from initiation fees, from contributions in the nature of rent from some of the other above-mentioned Masonic bodies, and from gifts, devises, and bequests. Appellant's ownership of the property is in the nature of a trust. It is a constituent of the Grand Lodge of Masons of New Mexico, to which all of its property would devolve in the event of its dissolution.

We quote now findings 11 and 12:

"The educational feature of plaintiff's work consists of a course of training in Freemasonry by class room methods. The fraternity is in itself a system of teaching, designed to make men more efficient in their professions, more useful to society, better in morality, and more faithful citizens. The Masonic ritual itself is a system of teachings of a historical, philosophical, ethical, æsthetic, and religious character. These teachings are binding on every member. One purpose of the lodge communications is continuously to expound and explain and enforce these teachings among its members. The literature of Masonry deals largely with all general cultural purposes and is made public. The lodge has lecturers and other speakers who speak on various occasions on many subjects of general importance, and distributes literature to its members and fosters loans of money to students to help them pursue their college courses.

"The charitable feature of plaintiff's work consists of relief to fellow members in need by individual members of the lodge. If the individual cannot meet that need it is referred to the lodge. If it exceeds the lodge's ability, the case is taken up by the Grand Lodge. The whole Masonic system is organized between the grand jurisdictions so as to give relief to every case where needed. Nothing is left to chance or caprice or accident. The lodge gives financial, medical, surgical or other aid to needy wives, widows and dependents of members, shares in supporting public charities, gives welfare service to many in hospitals and sanatoriums, helps to send children to the Shriner's Crippled Children's Hospitals, and gives relief in public calamities, such as the Mississippi and Galveston floods and the Florida tornado."

The trial judge refused the following requested finding No. 9:

"Plaintiff devotes its money to defraying the expenses and upkeep of its property, to pay the indebtedness thereon and for charitable, educational, social and fraternal purposes, and to carry out its civic duties to the community."

As we understand, however, the difference between the court and counsel was in the characterization of the purposes as "charitable, educational, social and fraternal." We do not think that the court meant that there was any use of appellant's money other than in defraying the expenses and upkeep of its property, paying the indebtedness thereon, and for the appropriate objects of Masonry, whether deemed mainly educational, charitable, or social.

The question before us is whether the learned trial judge was warranted, in view of these findings, in a refusal to conclude that the property is used for educational and charitable purposes, and entitled to exemption. This depends upon the meaning of the constitutional provision just referred to:

"The property of the United States, the state and all counties, towns, cities and school districts, and other municipal corporations, public libraries, community ditches and all laterals thereof, all church property, all property used for educational or charitable purposes, all cemeteries not used or held for private or corporate profit, and all bonds of the state of New Mexico, and of the counties, municipalities and districts thereof shall be exempt from taxation." Article 8, § 3.

It should be noted at the outset that few states have constitutional or statutory provisions more favorable to a claim of exemption under facts such as we have here, and that most states have less liberally provided.

Educational or charitable use, or ownership by educational or charitable organizations, are common grounds of exemption. But generally some qualifying language has been employed, such as "exclusively used," "devoted to the sole use," "public charity," or "purely public charity."

Where such modifying expressions have been employed, judicial opinion appears divided, though a weight of authority could perhaps be claimed in favor of exemption. But where the controlling statutory or constitutional provision approaches ours in liberality, and upon similar facts, there can scarcely be said to be a difference of view. The following decisions seem to us to support appellant's contentions: Ancient and A. S. R. of Freemasonry v. Bd. of County Com'rs, 122 Neb. 586, 241 N. W. 93, 81 A. L. R. 1166, holding a Scottish Rite Temple exempt as "property owned and used exclusively for educational, religious, charitable * * * purposes, when * * * not owned or used for financial gain or profit to either the owner or user"; Morrow v. Smith, 145 Iowa, 514, 124 N. W. 316, 26 L. R. A. (N. S.) 696, Ann. Cas. 1912A, 1183, holding a devise to a Masonic Lodge exempt from collateral inheritance tax, as made to a "charitable institution" (see Ann. Cas. note); Horton v. Colorado Springs Masonic Bldg. Soc., 64 Colo. 529, 173 P. 61, 62, L. R. A. 1918E, 966, holding a Masonic Temple exempt, as "used solely and exclusively for * * * strictly charitable purposes"; Board of Com'rs v. San Luis Valley Masonic Ass'n, 80 Colo. 183, 250 P. 147; Cumberland Lodge v. Nashville, 127 Tenn. 248, 154 S. W. 1141, 1143, holding Masonic property exempt as "property belonging to any * * * charitable * * * or educational institution * * * used exclusively for the purpose for which said institution was created"; In re Masonic Temple Society, 90 W. Va. 441, 111 S. E. 637, 639, 22 A. L. R. 892, holding the property exempt as used "for educational, literary, scientific * * * [or] charitable purposes" (see note); Salt Lake Lodge v. Groesbeck, 40 Utah, 1, 120 P. 192, 193, Ann. Cas. 1914C, 946, holding an Elks Lodge and club rooms exempt as "used exclusively for * * * charitable purposes."

The decisions cited and relied on by appellee will be found listed in the annotation, "Exemption from taxation of property of fraternal or relief association," in 22 A. L. R. under the heading, "Cases holding property not exempt," at page 912.

Included in this list are certain decisions involving mutual benefit societies, and associations of that nature, wherein the principles involved are obviously different. Such are State Council of C. K. of I. v. Bd. of Rev., 198 Ill. 441, 64 N. E. 1104; National Council of Knights & Ladies of Security v. Phillips, 63 Kan. 799, 66 P. 1011; National Council of Knights & Ladies of Security v. Phillips, 63 Kan. 808, 66 P. 1014; Life & Annuity Ass'n v. Shilling, 86 Kan. 290, 120 P. 548; Royal Highlanders v. State, 77 Neb. 18, 108 N. W. 183, 7 L. R. A. (N. S.) 380.

These cases are fairly distinguishable because of the more restrictive form of the exemption: Grand Lodge F. & A. M. v. Taylor, 146 Ark. 316, 226 S. W. 129; Lacy v. Davis, 112 Iowa, 106, 83 N. W. 784; Mason v. Zimmerman, 81 Kan. 799, 106 P. 1005; Summunduwot Lodge v. Spaeth, 81 Kan. 894, 106 P. 1077; Vogt v. City of Louisville, 173 Ky. 119, 190 S. W. 695, Ann. Cas. 1918E, 1040; Merrick Lodge v. City of Lexington, 175 Ky. 275, 194 S. W. 92; St. Louis Lodge v. Koeln, 262 Mo. 444, 171 S. W. 329, L. R. A. 1915C, 694, Ann. Cas. 1916E, 784; Scottish Rite Bldg. Co. v. Lancaster County, 106 Neb. 95, 182 N. W. 574, 17 A. L. R. 1020; Washington Camp v. Bd. of Equalization, 87 N. J. Law, 53, 93 A. 856; Sioux Falls Lodge v. Mundt, 37 S. D. 97, 156 N. W. 799, 2 A. L. R. 542;

City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S. W. 978; In re Linen & Woollen Drapers Inst., 58 L. T. (N. S.) 949.

Whether the exemption for property, used for charitable purposes, includes property leased if the rentals be so used, is a question not necessary to decide here. Such was the question in La Fontaine Lodge v. Eviston, 71 Ind. App. 445, 123 N. E. 468.

Some of the cases may be dismissed as clearly not in point, or of slight bearing. Attorney General v. Detroit Common Council, 113 Mich. 388, 71 N. W. 632; Ridgeley Lodge v. Redus, 78 Miss. 352, 29 So. 163; State v. Central St. L. Masonic Hall Ass'n, 14 Mo. App. 597; Grand Lodge v. Sarpy County, 99 Neb. 647, 157 N. W. 344.

This is not to say that the decisions we distinguish contain nothing of value in consideration of the present question; merely that they cannot serve as precedents.

Bangor v. Masonic Lodge, 73 Me. 428, 40 Am. Rep. 369, decided in 1882, held, on principles of strict construction, that the word "charitable" in the exemption statute must be interpreted as "public charity," and held that the fact that members only were the objects of the order's charity or benevolence was fatal to its claim to be a "charitable institution." The latter holding is clearly contrary to present authority, including a number of decisions in which the exemption has been disallowed. Ancient and A. S. R. of Freemasonry v. Bd. of County Com'rs, supra, and cases cited. Mason v. Zimmerman, supra; City of Houston v. Scottish Rite Benev. Ass'n, su-

pra; In re Masonic Temple Society, supra, and cases cited.

Washington Camp v. Board of Equalization, 87 N. J. Law, 53, 93 A. 856, distinguished supra, suggests that the ritualism and secrecy of the order raise a fair inference that the body is essentially social in its character and purposes; a doctrine which we have found no other court to espouse.

Scottish Rite Bldg. Co. v. Lancaster County, distinguished supra, is strongly relied on by appellee. We might disregard it, since it has been overruled by the recent (1932) decision in Ancient and A. S. R. of Freemasonry v. Bd. of County Com'rs, cited supra. In this overruled case, the court rejected the claim of exemption largely on the ground on which the trial judge here placed his decision —that the primary function and purpose of the lodge, or at least the primary use of the property, was social; as the Nebraska case put it, "gratifying the taste of its own members." Even if it were still authority, we think its facts would fairly distinguish it from the case at bar. This is true also of Elks, Green Bay Lodge, v. City of Green Bay, 122 Wis. 452, 100 N. W. 837, 106 Am. St. Rep. 984; Boston Lodge v. City of Boston, 217 Mass. 176, 104 N. E. 453; and St. Louis Lodge v. Koeln, distinguished supra. In those cases, it was the view of the several courts that the proven use of the property as a club overshadowed its use for charitable purposes, so that the latter was to be deemed incidental.

In addition to these cases, appellee cites and relies strongly on the recent (1932) case of Conrad v. Maricopa County (Ariz.) 12 P. (2d) 613. Arizona's statute (Rev. Code 1928, § 3066) provides: " * * * All property shall be subject to taxation, except * * * hospitals, asylums, poor houses, and other charitable institutions for the relief of the indigent or afflicted. * * * "

The rule of ejusdem generis was necessarily decisive. It could not well be maintained that the ordinary fraternal and benevolent order is a "charitable institution" of a class with hospitals, asylums, and poor houses.

Where the exemption is expressed in the more limited form, the question may be said to be close. As illustrating this, we note the curious fact that at the very moment the Supreme Court of Nebraska was overruling Scottish Rite Bldg. Co. v. Lancaster County, relied on by appellee, and distinguished supra, in Ancient and A. S. R. of Freemasonry v. Bd. of County Com'rs, relied on by appellant, and cited supra, the Supreme Court of Illinois was overruling its very recent (1931) People v. Freeport Masonic Temple, 347 Ill. 180, 179 N. E. 672, in People v. Dixon Masonic Bldg. Ass'n, 348 Ill. 593, 181 N. E. 434. Illinois and Nebraska simultaneously adopted each other's theories, each abandoning its own.

This glance at the authorities is quite persuasive that appellant, upon the findings and under our broad constitutional exemption, uses the property in question for educational and charitable purposes.

But appellee invokes the familiar doctrine that taxation is the rule and exemption

the exception, that, accordingly, he who claims exemption must overcome a presumption, and that the provision of law invoked by appellant is to be strictly construed. That general doctrine is not strange to this court. United States Trust Co. v. Territory, 10 N. M. 416, 62 P. 987; New Mexico v. U. S. Trust Co., 174 U. S. 545, 19 S. Ct. 784, 43 L. Ed. 1079; Samosa v. Lopez, 19 N. M. 312, 142 P. 927; State v. Bd. of Trustees, 28 N. M. 237, 210 P. 101; Berger v. University of N. M., 28 N. M. 666, 217 P. 245; Oden Buick, Inc., v. Roehl, 36 N. M. 293, 13 P.(2d) 1093.

But where the exemption is for the promotion of religious, educational, charitable, or similar objects, deemed beneficial to the state, and to afford a quid pro quo, an exception has frequently been declared. For expositions of this doctrine and collections of authority, see Horton v. Colorado Springs Bldg. Society; Cumberland Lodge v. Nashville; Salt Lake Lodge v. Groesbeck, all hereinbefore cited; People v. Farrell, 130 Misc. 142, 223 N. Y. S. 660; and Cooley on Taxation (4th Ed.) § 673.

In Ancient and A. S. R. of Freemasonry v. Bd. of County Com'rs, cited supra, it was said that the rule of strict construction "does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the Legislature, but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption."

Counsel for appellee urge upon us that we are committed against this more liberal view by State v. Bd. of Trustees and Berger v. University of N. M., supra. In the case first mentioned, it is true, one ground of exemption claimed was that the lands of the Las Vegas grant were used for educational purposes. It may be doubted from the opinion whether what was said about strict construction was meant to apply to that ground. If so meant, it was scarcely needed to sustain the conclusion there arrived at, that property *not* used for educational purposes was exempt for the mere reason that, if some time sold, the proceeds would become school funds. In the Berger Case, the rule of strict construction was "recurred to" as a general principle, and educational use was involved. If it be strict construction to hold, as this court there did, under the territorial statute, not under the Constitution, that property not in use at all, was not used or "devoted exclusively" to educational purposes, the decision would still afford but a poor measure of the degree of strictness to be applied in this or other cases.

From the standpoint of local authority, the matter stands thus: In two decisions not requiring strict construction for their support, this court has invoked the general doctrine, without noticing the exception above noted or the reasoning underlying it. Such broad pronouncements are not controlling. They are not highly persuasive.

The canon of strict construction, like others, is often helpful; sometimes of little use. It is very general. If admitted that construction is to be strict, the question remains, How strict? It serves merely to broaden the field of discussion and of authority; the orig-

inal and primary question being, How charitable or how educational must be the uses?

In the case at bar, we are to construe an exemption created by fundamental law. Unlike most constitutional exemptions, it does not merely define a field of exemption, within which the legislative power may operate from time to time at its discretion. It is affirmative and self-executing. It creates exemptions. It invests citizens with constitutional rights, which administrative officers or Legislature may not impair, and which courts must protect. Generally, such rights are not to be frittered away by a construction so strict as to be unreasonable or harsh. Of course, they are not to be so enlarged as to create rights which the Constitution makers did not contemplate. In short, the canon of strict construction cannot afford a sure formula for the decision of this case. It is scarcely more difficult to determine what uses are educational or charitable than to determine what construction is strict. Our problem is to ascertain the reasonable and probable intent.

No one denies that the property is used for educational and charitable purposes. The contention is that those uses are not exclusive of a certain amount of social enjoyment and gratification; that the educational advantages are not open to nonmembers; that the charity is ordinarily and preferably, though the evidence shows not necessarily or entirely, confined to members and their families; that the real object of this lodge and the main use of its property is fraternity, rather than charity or education. That is to demand that the Constitution be interpreted as if it said that the property must be used exclusively for purely public educational or charitable purposes. As we have seen, authority and precedent would strongly support appellant's claim, even if our Constitution were so framed. The omission of such qualifying phrases, so generally used, seems significant.

Not only did our Constitution makers depart in method and phraseology from systems of exemption common in other states; they departed considerably and significantly from the then existing territorial system, with which certainly they were familiar. The exemptions as of territorial days still appear in 1929 Comp. St. as section 141-110. Though compilers have traced its origin to the General Appropriation Act of 1891 (chapter 94, § 7), it dates back, as to all features here important, to Laws 1882, c. 62, § 3. It reads:

"141-110. The following property shall be exempt from taxation: Property of the United States and of this state, counties, cities, towns and other municipal corporations, when devoted entirely to public use and not held for pecuniary profit; all public libraries, the grounds, buildings, books, papers and apparatus of literary, scientific, benevolent, agricultural and religious institutions and societies, when the property of the said institutions and societies shall be devoted exclusively to the appropriate objects of such institutions and not leased or rented or otherwise used with a view to pecuniary profit; irrigating ditches, canals and flumes belonging to communities and used exclusively for

irrigating lands, without any charge or compensation for the same or for the water thereof, except the necessary work and charges to keep the same in repair; and cemeteries not held and used for pecuniary profit."

A comparison of this with the constitutional provision which supplanted it discloses an elimination of those qualifying expressions which we are now asked to apply as if they had been retained. The elimination must have been deliberate and studious. The conclusion is natural, and not readily to be avoided, that a purpose existed to extend the field or liberalize the policy of tax exemption.

Formerly, "the grounds, * * * books, papers and apparatus of literary, scientific, benevolent, agricultural and religious institutions and societies" were exempt "when the property of the said institutions and societies shall be devoted exclusively to the appropriate objects of such institutions and not leased or rented or otherwise used with a view to pecuniary profit." Does the omission of literary, scientific, and agricultural societies indicate that they have lost their exemption? We think it more reasonable to conclude that the new term "educational" was thought to include them; thus suggesting that schools and colleges are not the only means of education. "Benevolent" is perhaps more appropriate than "charitable," as applied to the fraternal orders. But the terms have frequently been held synonymous in this connection. While both use and ownership were formerly requisite, use alone now suffices. The use must formerly have been exclusive of purposes inappropriate to the objects of

the societies and institutions, and free from the taint of pecuniary profit. Such limitations no longer exist, at least not as arbitrary and controlling limitations.

An early interpretation (May 19, 1912), by former Attorney General Clancy, held St. Joseph's Sanatorium of Silver City exempt, though "most of the patients * * * pay for their care and treatment." Referring to the constitutional provision (then article 8, § 7), he said: "This is a positive, affirmative provision which needs no legislation to make it operative. The exemption would extend to any hospital which is used for charitable purposes even though at the same time accommodations may be provided for patients who are able and willing to pay for care and treatment. I understand that the hospital referred to * * * is primarily of a charitable character and whether much or little charitable work is done I believe that it falls within the constitutional exemption and that its property, used for charitable purposes, cannot be taxed." Opinions of Attorney General, 1912-13, p. 36.

Authority is not wanting to support this view, as will appear from a reading of the decisions herein cited.

We understand from the arguments that the property of the fraternal orders used for lodge purposes has been generally, perhaps uniformly, exempted, and that the present assessment and suit were designed to test the question of constitutional right. In view of this early and consistent interpretation and practice, the fact is worth considering

that the 1913 Legislature proposed (Laws 1913, p. 170) a complete revision of the original article 8 of the Constitution, entitled "Taxation and Revenue," in which the old section 7 was embodied, without change, as section 3, and that the people adopted the same at the election of November 3, 1914.

This early interpretation and uniform practice is highly persuasive, if not controlling. The principle is familiar that, in a case of doubt, courts will sustain the reasonable construction long and uniformly followed by the co-ordinate branches of the government. It is not comity alone that dictates this rule. It is because of the unfortunate and far-reaching results often produced by a judicial decision rendering illegal what has been theretofore recognized as legal. If this rule were not generally observed, legal decisions might, by their upsetting results, do more harm than good. In such cases it is deemed wiser to leave the desired reform to the political departments which can minimize the consequences of change by limiting its results to the future.

Opinion will greatly differ as to the wisdom and sound policy of exempting property used for purposes of fraternal orders. Much opinion, which was not aroused before, will deprecate the policy, now that the need for revenue is so great, that its sources are drying up and that taxing authorities are struggling to stop leaks. But, as the courts must view it, the policy, whatever it is, is fixed. The policy of 1910 and of 1914 is that of 1932. This is not a case where the broad language of a Constitution may be adapted to changed times and conditions. The Legislature, to say nothing of the courts, may not impair the constitutional right of exemption so far as expressed in section 7, now section 3.

The broad expression "used for educational or charitable purposes" necessarily imposes upon the courts a severe task of interpretation. It is easy to instance purposes clearly within it. It is not difficult to suggest instances which would reduce to absurdity a rule too liberal. Appellees point out that the ordinary home is customarily used for educational purposes and often for charitable purposes. In a broad sense, a golf professional, a riding master, or a boxing instructor, is engaged in education. Charity may "cover a multitude of sins." The line of demarcation cannot be projected. It can take shape only by the gradual process of adjudicating this or that purpose or use on the one side of it or on the other, or by change in the constitutional criteria.

The present decision is reached upon the present record. We lay down no general rule as to fraternal orders or as to Masonic Lodges generally. We do not prejudge the case where the educational or charitable purposes may seem but professions or cloaks for exemption, while the real and substantial use may seem to be ostentation and indulgence. But charity and education are no less effective, and sometimes more so, when their austere qualities are coated and hidden by fraternal and social intercourse. The strictness herein demanded by appellee might open a serious question as to whether some of the more suc-

188

cessful and useful churches could qualify as religious societies.

In deciding the case, the learned trial judge said: "Our Constitution says that all property used for educational or charitable purposes shall be exempt. It is true we cannot read into that the word 'exclusively,' we cannot read into it all property used exclusively for charitable purposes, but neither can we read into it the phrase 'incidentally' or 'occasionally.' We cannot make it read 'all property used incidentally for charitable purposes' nor can we make it read 'all property used occasionally for charitable purposes' or 'all property used from time to time for charitable purposes.' I think the words must be given a common sense construction—that the section means all property used primarily or substantially for charitable purposes shall be exempt."

We find no fault with the idea that the educational or charitable use must be both substantial and primary. But, under the facts in this case and our views of the law, we are of opinion that the use here shown entitles appellant to the exemption claimed and to the relief sought.

The judgment will accordingly be reversed, and the cause remanded, with direction to award the injunction prayed for. It is so ordered.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.