524 So.2d 336 (1988)
Robert CHILDREE
v.
Dr. Paul HUBBERT and Margaret Ann Hubbert.
ALABAMA DEPARTMENT OF YOUTH SERVICES
v.
Dr. Paul HUBBERT and Margaret Ann Hubbert.
OFFICE OF PROSECUTION SERVICES
v.
Dr. Paul HUBBERT and Margaret Ann Hubbert.
ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION
v.
Dr. Paul HUBBERT and Margaret Ann Hubbert.
ALABAMA PUBLIC LIBRARY SERVICE, et al.
v.
Dr. Paul HUBBERT and Margaret Ann Hubbert.
ALABAMA SPACE SCIENCE EXHIBIT COMMISSION
v.
Dr. Paul HUBBERT and Margaret Ann Hubbert.
ALABAMA DEPARTMENT OF ECONOMIC AND COMMUNITY AFFAIRS
v.
Dr. Paul HUBBERT and Margaret Ann Hubbert.
ALABAMA STATE COUNCIL ON THE ARTS
v.
Dr. Paul HUBBERT and Margaret Ann Hubbert.
87-215, 87-280, 87-281, 87-282, 87-307, 87-324, 87-325 and 87-326.
Supreme Court of Alabama.
March 23, 1988.
Rehearing Denied April 11, 1988.
William G. Somerville, Jr., and Robert McD. Smith, Birmingham, and John T. Alley, Jr., Robert Sasser, Michael M. Eley, and Dorothy Littleton, Montgomery, for appellant Robert Childree.
*337 Thomas R. Christian and Robert Childers, Montgomery, and William J. Samford II, Mt. Meigs, for appellant Alabama Dept. of Youth Services.
Bryan E. Morgan, Montgomery, for appellant Office of Prosecution Services.
Thomas B. Klinner and G.R. Trawick, Montgomery, for appellant Alabama Dept. of Mental Health.
James T. Sasser of Wood & Parnell, Montgomery, for appellants Ala. Public Library Service, Ala. Firefighters', Personnel Standards and Educ. Commission, Ala. Com'n on Physical Fitness, and Ala. Bd. of Nursing.
David W. Spurlock, Robert D. Thorington, Wendell Cauley, and W. Stanley Gregory of Johnson & Thorington, Montgomery, and J.R. Brooks of Ford, Caldwell, Ford & Payne, Huntsville, for appellants Ala. Space Science Exhibit and Ala. Space and Rocket Center.
Edward E. Davis, Montgomery, for appellant Ala. Dept. of Economic and Community Affairs.
L. Tennet Lee III, Huntsville, for appellant Ala. State Council on the Arts.
Lee Miller, Montgomery, for appellant Ala. Dept. of Finance.
Jerry Carpenter and Stephen N. Dodd, Montgomery, for appellant Ala. Bldg. Com'n.
Robert D. Segall and E. Terry Brown of Copeland, Franco, Screws & Gill, Montgomery, for appellees Dr. Paul Hubbert and Margaret Ann Hubbert.
David R. Boyd of Balch & Bingham, Montgomery, for amici curiae Legislators James S. Clark, Ryan deGraffenried, Jr., Taylor F. Harper, James M. Campbell, Tommy Carter, Charles Adams, Gary White, G.J. "Dutch" Higginbotham, William M. Slaughter, William Fred Horn, Lowell Barron, Richard S. Manley, Perry A. Hand, Frank Ellis, Jr., and William H. Drinkard.
ALMON, Justice.
These appeals arise from a judgment holding that the general appropriation act (1987 Ala. Acts No. 87-715) is unconstitutional insofar as that Act makes particular appropriations from the Alabama Special Education Trust Fund ("the ASETF") to various agencies of the state. The question presented is whether appropriations to state agencies can be made from the ASETF in a general appropriation bill.
The Constitution of 1901, § 45, provides in pertinent part:
"Each law shall contain but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes...."
The exception for general appropriation bills is limited by § 71:
"The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for the public schools.... All other appropriations shall be made by separate bills, each embracing but one subject."
While the 1987 Legislature was in session, the members of this Court answered an advisory opinion request from the Legislature with the opinion that the omnibus "education appropriation bill," while not a § 71 general appropriation bill, could stand as a § 45 single-subject bill because the subject of "public education" had historically been treated comprehensively in such appropriation bills. Opinion of the Justices No. 323, 512 So.2d 72 (Ala.1987). The opinion stated that no appropriations could be made in such a bill to institutions not controlled by the state, and then expressed a reservation as to appropriations to state agencies not obviously educational in nature:
"The appropriations to state agencies must come within the subject of public education. We cannot test the specific appropriations in the bill, however, because the bill in most cases gives only general descriptions of the recipients. *338 For example, an appropriation to the department of public health for immunizations of school children and for public school food sanitation probably comes within the subject, but a decision would have to wait for a contested case."
Id., at 77.
After that opinion issued, the legislature removed a number of appropriations from the education appropriation bill and added them to the general appropriation bill that became Act No. 87-715, the act now at issue. Appropriations in Act No. 87-715 from the ASETF to the following entities are now contested: the Department of Finance; the Alabama Academy of Honor; the Alabama State Council on the Arts and Humanities; the State Building Commission; the Department of Education; the Department of Examiners of Public Accounts; the Alabama Firefighters' Personnel Standards and Education Commission; the Alabama Law Institute; the Legislature; the Alabama Public Library Service; the Alabama Board of Nursing; the Commission on Physical Fitness; the Space Science Exhibit Commission; the Department of Youth Services; the Alabama Small Business Development Consortium; the Department of Public Health; the Alabama Department of Economic and Community Affairs; the Department of Mental Health and Mental Retardation; and the Office of Prosecution Services.
On August 27, 1987, Dr. Paul Hubbert and Margaret Ann Hubbert filed their complaint in the instant case, naming as defendants George C. Wallace, Jr., as treasurer of the State of Alabama, and Robert Childree, as comptroller of the State of Alabama. Many of the above-named recipients of the appropriations from the ASETF intervened as defendants.
The trial court entered judgment for the plaintiffs on November 13, 1987, but stayed the effect of its judgment for 45 days. By order of December 17, 1987, this Court extended the stay during the pendency of this appeal. The case was argued and submitted on February 8, 1988. Because we shall address separate issues raised by the various parties, we deem it useful to itemize the briefs filed. Three separate appellants' briefs have been filed: one for defendant Childree; one for defendant/intervenor Alabama Space Science Exhibit Commission ("the Exhibit Commission"); and one for defendants/intervenors Alabama Public Library Service, Alabama Firefighters Personnel Standards and Education Commission, Alabama Board of Nursing, and the Governor's Commission on Physical Fitness ("the APLS parties"). Several other intervenor/defendants have appealed, but they have simply joined Childree's brief. An amicus curiae brief, arguing in support of the appropriations, has been filed on behalf of 15 legislators. All but the APLS parties have also filed reply briefs. The appellees' brief filed on behalf of the Hubberts provides the only argument in support of the judgment.
Childree's position is shown in the following summary of the primary argument in his brief, to which we have added the numbers in brackets:
"It will be shown below first that [1] the appropriations are indeed for expenses of `the executive, [etc.,] departments of the state,' and then that [2] they are rendered no less so merely because they are made to state agencies for administration of state educational functions at the state level. That [3] the appropriations in question are for `ordinary expenses' within the meaning of that term as used in § 71 and the like constitutional provisions of other states will next be addressed. Consideration will then be given to [4] whether coverage of appropriations for such expenses under § 71's authorization of appropriations for `ordinary expenses of the executive, [etc.,] departments of the state' is expunged somehow by something in § 71 itself, or by some other means."
Childree essentially takes as granted that the appropriations at issue are for "educational purposes" and then argues that they may be included in a general appropriation bill because they are made to state agencies for ordinary expenses. The Exhibit Commission takes a different tack, disputing the view that the appropriations *339 are for educational purposes, and arguing that they may nevertheless be funded with ASETF moneys because there is not a constitutional limitation on the majority of ASETF moneys requiring that they be used for education, but only a statutory earmarking that is not binding on the legislature. The APLS parties and the legislators take the same position as Childree; that is, they assume (for most of their argument) that ASETF moneys must be used for educational purposes and argue that these appropriations are both ordinary expenses and educational functions and so can be made from ASETF moneys in a general appropriation bill.
The issues regarding whether educational appropriations can be made in a general appropriation bill arise because this Court has expressed the opinion and held on several occasions that the phrase "public schools" in § 71 allows appropriations only for grammar and high schools, i.e., not for colleges, universities, trade schools, and the like. See Opinion of the Justices No. 323, 512 So.2d 72 (Ala.1987); Alabama Education Ass'n v. Board of Trustees of the Univ. of Alabama, 374 So.2d 258 (Ala. 1979); State Tax Comm'n v. Board of Ed. of Jefferson County, 235 Ala. 388, 179 So. 197 (1938); Opinion of the Justices No. 31, 229 Ala. 98, 155 So. 699 (1934); Elsberry v. Seay, 83 Ala. 614, 3 So. 804 (1888).
On the other hand, the issues regarding whether "non-educational" appropriations can be made from the ASETF arise because the acts creating and allocating revenues to the ASETF specified that the revenues collected under the specified taxes
"shall be set apart as a Trust Fund for educational purposes only, to be designated as the Alabama Special Educational Trust Fund, and shall be kept separate and apart from all other funds in the State Treasury, and shall be paid out by the Treasurer on lawful appropriations, hereafter made specially from such funds by the Legislature of Alabama for educational purposes."

1927 Ala. Acts No. 163, § 2-K, at p. 148 (emphasis added). Similar language was included in 1935 Ala. Acts No. 194, § 405, at p. 573. The latter act was not only a general revenue act, but also adopted a revenue code that was the source of most of the "Revenue and Taxation" title, title 40, of the 1975 Code of Alabama.
These revenue acts of 1927 and 1935, which created and provided the initial funding for the ASETF, are the corollaries to the first "education appropriation" acts. This Court has referred to 1927 Ala. Acts No. 382 as the first of the modern omnibus education appropriation acts, Opinion of the Justices No. 323, supra, at 76, and cited 1935 Ala. Acts No. 326 as a succeeding "public education" appropriation act, id., at 77. Thus, the Legislature created and funded the ASETF at the same time as it began passing the comprehensive education appropriation bills that are primarily made up of appropriations from the ASETF.
Shortly after the ASETF was created, the majority of the income tax was constitutionally directed to be deposited to the credit of the ASETF, "to be used for the payment of public school teachers salaries only." Const. of 1901, amend. No. 61, proposed and ratified in 1947.
Other taxes have been enacted and earmarked to the ASETF, sometimes including language such as "for educational purposes only," sometimes not. These include at least portions of the revenues generated by the sales tax, Ala.Code 1975, § 40-23-35, and the use tax, § 40-23-85; the public utilities gross receipts tax, § 40-21-87, and the utility service use tax, § 40-21-107; taxes on rentals of personal property, § 40-12-227, and sales of automotive vehicles, § 40-23-108; the excise tax on brewed beverages, § 28-3-184(c)(3); and certain insurance premium taxes, §§ 27-4-4(a)(2) and -5(c)(2).
The original taxes funding the ASETF were license and privilege taxes on railroads; telegraph businesses; telephone businesses; express companies; hydro-electric power businesses; coal mines; iron ore mines; other mines, quarries, and sand and gravel pits; sleeping car companies; and sellers of cigars and cigarettes. See 1927 Ala. Acts No. 163, §§ 2 through 2-J. The *340 legislature carried these[1] forward with the same earmarking in the 1935 general revenue act cited above, 1935 Ala. Acts No. 194, § 405, and added to the ASETF receipts from a license tax on stores, id., Article XIII, Chapter 3.
The greater part of these license taxes[2] are still earmarked to the ASETF either under the chapters imposing the tax, see Ala.Code 1975, § 40-25-23,[3] or by virtue of § 40-1-31, or both. Section 40-1-31 states that the revenues credited to the ASETF are "to be used for educational purposes." Its predecessor, Ala.Code 1940, t. 51, § 910, stated that the funds "shall be kept separate and apart from all other funds in the treasury and shall be paid out by the treasurer on lawful appropriations made especially from such funds by the legislature of Alabama, for educational purposes," i.e., it tracked the language of the 1927 and the 1935 acts.
Thus it can be seen that the ASETF is a statutory creation, except insofar as it is funded by the income tax constitutionally earmarked for teachers' salaries. The Exhibit Commission's brief addresses this aspect of the issues before us more squarely than the other appellants' briefs. Therefore, the most significant question is whether appropriations from the ASETF must be for educational purposes. Only if that question is answered in the affirmative would we be required to answer the question of whether such appropriations can be made in a general appropriation bill.
In determining the nature and effect of the restrictions on funds placed in the ASETF, an important fact to be considered is that all of the provisions earmarking funds for the ASETF, except the income tax provisions in amendment 61, have been enacted in revenue acts. The distinction between revenue bills and appropriation bills appears in § 45, which lists general appropriation bills separately from general revenue bills as exceptions to the single-subject requirement. In Nachman v. State Tax Comm'n, 233 Ala. 628, 634, 173 So. 25, 30 (1937), it was argued that an act imposing a license tax on retail stores and places of amusement and "appropriating" (appellant's term, not the statute's) the money "first, to the relief of the owners of homesteads to the extent of $2,000.00 of property; and, second, to the Educational Trust Fund," violated both § 45's single-subject requirement and § 71's requirement that all appropriations not in general appropriation bills be made by separate bills.
The Court answered the argument as follows:
"It is urged that the framers of the Constitution with great care separated the two subjects, `even in the exception as to general revenue bills and general appropriation bills in section 45.' It is also insisted `logrolling' could not be prohibited if the two subjects can be combined into one; that one is a burden, while the other is a benefit.
"In reply to this insistence it is sufficient to point out that the act does not undertake to make any appropriation within the meaning of section 71 of the Constitution. It is undoubtedly within the competence of the Legislature in levying a tax to provide, in the same bill, into what fund of the State the tax money when collected shall be paid, whether into the general fund, or into any special fund. It is but earmarking ... the fund, thereafter to be expended, on due appropriation, for the purposes for which the tax was levied and collected. To provide that certain funds derived from particular sources shall be paid and used for designated purposes of government is in no sense an appropriation as contemplated by section 71 of the Constitution."

233 Ala. at 634, 173 So. at 30 (emphasis added).
*341 In 1980, seven Justices issued an opinion following this holding. Opinion of the Justices No. 266, 381 So.2d 187 (Ala.1980).
If earmarking is not appropriating, but rather a matter properly included in a revenue bill, the converse is also true: the removal or disregard of earmarking is not a matter properly to be included in an appropriation bill. Presumably, the earmarking could be removed in a proper single-subject bill or in a properly constituted revenue bill, but until such an action is taken, no appropriation bill can appropriate such funds other than as they were earmarked.
The point that earmarking cannot be repealed by an appropriation bill becomes even clearer when considered in light of the fact that the earmarking provisions are now substantive parts of the Code. See, e.g., § 40-1-31. Therefore, disregard of earmarking would violate the Code, and repeal of earmarking would amend the Code. For the legislature to either disregard or repeal earmarking in an appropriation bill would violate § 71 or § 45, for the same reasons as discussed above regarding revenue bills.
Thus, any appropriation bill appropriating ASETF funds other than as specified in the acts creating the ASETF and in the Code would violate § 71 or § 45 of the Constitution.
We do not find it significant that some of the revenue bills earmarking money for the ASETF did not include the requirement that the funds be spent for educational purposes. The 1927 and 1935 general revenue acts creating the ASETF specified that the funds therein were to be paid out only on appropriations "made specially ... for educational purposes." The operative portion of this language is carried forward into § 40-1-31. Although that section refers in terms only to the license taxes, it nevertheless carries forward the original legislative intent that all money in the ASETF must be spent for educational purposes.
The question, then, is whether such appropriations can be made in a general appropriation bill. We note that § 71 specifically states that appropriations for the public schools can be made in a general appropriation bill, and those appropriations, as limited by the decisions interpreting the term "public schools," can be made from the ASETF. Therefore, the only question is whether appropriations for the ordinary expenses of the executive, legislative, and judicial branches can be made from the ASETF.
We do not find decisive the argument that the appropriations at issue are "ordinary expenses" and at the same time "for educational purposes." This may in some sense be true, but the argument could too easily be taken to an extreme. For example, it could be said that highway construction is both an ordinary expense of the Highway Department and an expenditure for educational purposes because it allows the transportation of children to school. Some of the claims that the appropriations at issue are for educational purposes are nearly as tenuous as this example. If such arguments were sufficient to justify the inclusion of ASETF moneys in general appropriation bills, the requirement that those funds be used for educational purposes could become meaningless.
Whether or not appropriations in the general appropriation bill can have an incidental educational purpose, they must be for ordinary expenses of the executive, legislative, and judicial branches. Conversely, appropriations from the ASETF must be for educational purposes. Therefore, to allow appropriations from the ASETF in a general appropriation bill would be to impose a test in addition to those imposed by § 71, i.e., is it for educational purposes? To graft such a species of appropriations onto a general appropriation bill would violate both the spirit and the letter of §§ 71 and 45.
The Chief Justice reads this opinion as holding that no appropriations with an educational purpose can be made in the general appropriation bill, except appropriations for the "public schools." That is not the case. What we do hold is that appropriations from the ASETF cannot be made *342 in a general appropriation bill unless they are for the "public schools." To hold otherwise would lead to interminable disputes with no fixed guidelines as to what "ordinary expenses" have a sufficient "educational purpose" to be funded from the ASETF in a general appropriation bill. We note that the Chief Justice quotes from Temple Lodge No. 6, A.F. & A.M. v. Tierney, 37 N.M. 178, 20 P.2d 280 (1933), to the effect that "educational purposes" is a "broad expression" imposing "a severe task of interpretation." The Chief Justice's attempt to set forth a definition by which ASETF appropriations could be included in general appropriation bills is itself so broad that "The line of demarcation cannot be projected." Id.
For the foregoing reasons, we hold that the appropriations at issue cannot be made from the ASETF in a general appropriation bill. To the extent that the judgment below so holds, it is affirmed.
AFFIRMED.
MADDOX, JONES, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., concurs in part and dissents in part.
TORBERT, Chief Justice (concurring in part and dissenting in part).
In this case, important constitutional issues involving the appropriation process were presented to this Court. I had hoped that the Court would resolve these issues clearly and with finality in order to give guidance and direction to our coordinate branch of government, the Legislature.
In reviewing the constitutionality of legislative enactments, this Court has consistently, over the years, recognized that the power of the Legislature is plenary except as limited by constitutions. "[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law". Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944); see also Home Indemnity Co. v. Anders, 459 So.2d 836 (Ala.1984).
I do agree with the majority opinion that, as the ASETF is presently established, appropriations from it are earmarked for educational purposes, and that the Legislature can not unearmark that money in a general appropriation bill. While § 45 excepts revenue bills and general appropriation bills from the single-subject requirement of § 45, § 71 does put limits on what can be properly included in a general appropriation bill. In addition, there is case law on the question of what is properly included in appropriation or revenue bills. In Alabama Education Association v. Board of Trustees of the Univ. of Alabama, 374 So.2d 258 (Ala.1979), while the Court split on the question of whether the legislation at issue was a general appropriation bill or simply an appropriation bill, the entire Court agreed that only those things germane to appropriations were properly included in the legislation.[1] In Houston County Board of Revenue v. Poyner, 236 Ala. 384, 182 So. 455 (1938), the Court held that only matters pertinent or germane to raising revenue were properly included in a revenue bill. In Opinion of the Justices No. 266, 381 So.2d 187 (Ala.1980), the Court recognized that bills that provide for earmarking do not have the same general purpose as bills that make appropriations. These cases are additional support for the majority opinion's conclusion that unearmarking is not properly accomplished in a general appropriation bill. Therefore, for an item to be funded from the ASETF, the item must have an educational purpose.
*343 This holding does not, however, resolve the issues presented. We should consider the meaning of the provisions of § 71 of the Constitution as they may apply in this case.
Section 71 restricts the type of appropriations that can be made in a general appropriation bill. Only appropriations for "the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for the public schools" can be included in the general appropriation bill. The majority opinion seems to recognize that the appropriations at issue are for the ordinary expenses of state government[2] while implicitly recognizing that this is true notwithstanding the fact that some of them may also have an educational purpose. The trial court found that the appropriations were "intended to be for educational purposes." The majority affirms the trial court's holding that the only appropriations for educational purposes that can be made in the general appropriation bill are those for "public schools."
I disagree, provided the appropriations are for the ordinary expenses of one of the three departments of our state government. To understand this disagreement, it is necessary to look at the history and purpose of § 71.
First, it should be noted that there is a scarcity of historical information with regard to the specific purpose for which § 71 was placed into the Alabama Constitution. A review of the journals of the Constitutions of 1875 and 1901 and the Alabama Constitutions in which this clause appears gives little guidance as to why this restriction was put into the Constitution. However, we do know something about the purposes of provisions similar to § 71 and its counterpart, § 45, as they are rather common provisions in numerous state constitutions. Sutherland Stat. Const., § 17.01 (4th ed 1985). Further, the history of the placement of § 71 and its counterpart, § 45, into our Constitution is also enlightening. The first two constitutions of this State, those of 1819 and 1861, contained no single-subject restriction similar to that in § 45, nor the provision of § 71 or its equivalent. The Constitution of 1865 was the first to contain a single-subject restriction such as that in § 45; see Art. IV, § 2. The single-subject requirement was designed to prevent the abuses of log-rolling. Opinion of the Justices No. 326, 511 So.2d 174 (Ala.1987). Section 45's single-subject restriction also appears in the Constitution of 1868, Art. IV, § 2. The predecessor of § 71 first appeared in the Constitution of 1875, Article IV, § 32, and was repeated in the Constitution of 1901. The history of the placement of these provisions under consideration suggests to me that the log-rolling problem initially came to light while the state operated under the 1819 and 1861 Constitutions. The framers of the Constitutions of 1865 and 1868 placed single-subject restrictions in the constitution to alleviate that problem. It probably became evident that there was an advantage in allowing more than one subject to be included in a single bill where that bill provided for the ordinary expenses of state government. It is impractical and too time-consuming to fund every agency in a separate bill. In summary, § 45 placed a restriction on the Legislature by requiring it to pass a separate bill for each subject, and § 71 was an exception to that general requirement necessary to provide for the orderly funding for state government.
With that general history in mind, we should ask the reason for the particular wording of § 71. In particular, why was the term "public schools" specifically included? Was funding for the public schools not considered to be an "ordinary expense" of state government, so that it was necessary to provide specifically for such? Or did the framers understand that funding for public education generally was within the ordinary expenses of state government, but intend to limit spending *344 for education in the general appropriation bill to only that funding for what was historically known as the "common schools." My review of historical material available does not provide any conclusive answers. T. Skinner, Alabama Constitution Annotated (1938); 5 Financial Administration of the State Government of Alabama, (1932) (a report prepared by the Institute for Government Research of the Brookings Institution); M. McMillan, Constitutional Development in Alabama, 1798-1901: A Study in Politics, the Negro, and Sectionalism (1978). At the time the Constitutions of 1875 and 1901 were written, there was a great deal of debate about the role of state government in providing for schools. McMillan at 206, 236-40. This debate took place in the larger context of a general attempt to restrict the power of the Legislature because of the perceived abuses of past Legislatures. McMillan at 197. Section 71 was also written in a time when public education in Alabama was being decentralized. McMillan at 207. Whereas education in the past had been directed at the state level, most control of the public schools was then being decentralized and put in the hands of the local authorities. The appellants argue that the placing of educational responsibility into the hands of local authority may have been a reason why § 71 was written as it now appears. Specifically, they argue that because local school boards were not considered to be agencies of state government (at least at that time in history), education funding could not be made through the "ordinary expenses of state government" phrase because the entities receiving those appropriations were not state agencies. While this historical evidence is enlightening, it does not conclusively answer the question presented. Therefore, it is my view that construction of § 71 should be made in light of the purposes sought to be served by that section, Sutherland Stat. Const., § 58.06 (4th ed 1984), and in light of the impact on state government the various constructions that are advanced by the parties in this case would have. "[C]onstitutions are made for practical purposes and look to practical ends, and in the construction of them we are to take into consideration the conditions which confronted the constitution-makers, and, if possible give the instrument such construction as will carry out the intention of the framers, and make it reasonable rather than absurd." Poyner, 236 Ala. at 386, 182 So. at 456.
First, § 71 should be construed in a manner that allows for the efficient, orderly funding of state government. However, because it is an exception to the single-subject requirement of § 45, it should be construed in such a manner as to allow for such efficient funding, but to prevent the emasculation of § 45's general requirement. Poyner, supra. Moreover, § 71 specifically provides that "The general appropriation bill shall embrace nothing but appropriations for...." (emphasis added). In addition, if it is possible, § 71 should be construed so that all operative clauses of the provision are given effect or some sphere of operation and that none be so construed as to be superfluous. Sutherland Stat. Const., § 46.06 (4th ed 1984). Section 71 states that the general appropriation bill can provide for three things, one very broad and two limited in scope: the ordinary expenses of state government, interest on the public debt, and the public schools. Therefore, at first blush it would appear that appropriations for the interest on the public debt and for the public schools were not considered to be ordinary expenses of state government or else it would have been unnecessary to specifically provide for them. However, just saying this does not answer the question as to why they were not considered to be ordinary expenses of state government. As previously noted, at least with respect to the "public schools" phrase, the appellants argue that it was because the appropriations were to go to local boards of education, which, they argue, were not considered state agencies at that time.
Appellees argue, and the majority opinion agrees, that by specifically providing for the public schools, the framers of the Constitution implicitly restricted funding for education in the general appropriation bill to only that for the public schools. *345 Such a construction is in my view, overly restrictive. We can take judicial notice of the fact that virtually every state agency has some incidental educational function. It may be no more than to provide information to the public about what the agency does, or it may have a more extensive educational function. The majority's construction of § 71 would require that no appropriation to any state agency for any "educational purpose," as that term is used in the legislation creating the ASETF, could be provided for in the general appropriation bill under the "ordinary expense" phrase. Such a construction is too restricted, because it would unduly hinder the efficient funding of state government. However, it is clear that not just any education funding can be made under § 71. In a series of cases cited in the majority opinion, we have stated that appropriations for colleges and universities could not be made in the general appropriation bill because of § 71. However, those cases dealt only with the question of whether funding for colleges and universities could be made under the "public schools" phrase of § 71. While the opinions do use very broad and sweeping language about the inability to fund colleges and universities in the general appropriation bill, the propriety for such funding was always tested under the "public schools" phrase. None of those cases involved the question of whether appropriations for educational activities of state agencies other than post-secondary educational institutions could be included in the general appropriation bill, and no case cited by any party supports the proposition that appropriations such as those involved in this case are not within the ambit of the "ordinary expenses of state government" phrase of § 71.
Given the principle that some educational activities can be funded through the "ordinary expenses of state government" phrase and, yet, that the "public schools" phrase has been consistently interpreted not to allow for the funding of colleges and universities, I believe a rational, workable distinction can be drawn between appropriations for non-traditional education that does not take place in a classroom setting and appropriations for formal traditional education. More specifically, because of our prior decisions, appropriations for schools or institutions of learning other than those that were historically known as the common schools, grades kindergarten through 12, can not be made in the general appropriation bill. However, appropriations for the ordinary expenses of state government can include appropriations that will be used for educational activities of state agencies.
If the appropriations challenged in this case are for the ordinary expenses of state government, then we should decide now the appropriate test for the Legislature to use to determine whether the activity can be funded from the ASETF. Statutes establishing this fund have merely provided that the funds "be used for educational purposes."
My research has revealed no case that has addressed the question of what kind of educational activity is properly funded from the ASETF. The Court of Appeals once defined "education" as "the process of developing and training the powers and capabilities of human beings" and noted that "[e]ducation means more than the acquisition of knowledge out of textbooks, however desirable that may be." Barbers Commission of Mobile County v. Hardeman, 31 Ala.App. 626, 21 So.2d 118 (1945). "Educational purpose" has been defined in one context as:
"Term as used in constitutional and statutory provisions exempting property so used from taxation, includes systematic instruction in any and all branches of learning from which a substantial public benefit is derived, and is not limited to such school properties as would relieve some substantial educational burden from the state."
Black's Law Dictionary 461 (5th ed 1979). In Opinion of the Justices No. 323, 512 So.2d 72 (Ala.1987) we defined "appropriations for public education" for the purpose of § 45's single-subject requirement, by reference to what the Legislature had historically included in the education appropriation bill. Reference to contemporaneous *346 and practical interpretations is a valid tool in determining the proper construction of a statute or constitution. Sutherland Stat. Const., § 49.03 (4th ed 1984).
The difficulty of the problem was artfully expressed in Temple Lodge No. 6, A.F. & A.M. v. Tierney, 37 N.M. 178, 187, 20 P.2d 280, 284-85 (1933):
"The broad expression `used for educational or charitable purposes' necessarily imposes upon the courts a severe task of interpretation. It is easy to instance purposes clearly within it. It is not difficult to suggest instances which would reduce to absurdity a rule too liberal. Appellees point out that the ordinary home is customarily used for educational purposes and often for charitable purposes. In a broad sense, a golf professional, a riding master, or a boxing instructor, is engaged in education. Charity may `cover a multitude of sins.' The line of demarcation cannot be projected. It can take shape only by the gradual process of adjudicating this or that purpose or use on the one side of it or on the other, or by change in the constitutional criteria."
We should give guidance to the Legislature. I cannot agree to limit appropriations out of the ASETF in the general appropriation bill to only "the public schools." Instead, I would hold that appropriations out of the ASETF can be made to a state agency other than post-secondary institutions whose direct, immediate, and primary use of the funds embraces systematic instruction in any branch of learning from which a substantial public benefit is derived. See NRA Special Contribution Fund v. Board of County Commissioners of Colfax County, 92 N.M. 541, 591 P.2d 672 (1978).
In concluding that the appropriations in this case violate § 71, the majority must mean to say that if an appropriation is for an "educational purpose" as that term is used in the legislation creating the ASETF it can not be an "ordinary expense of state government." In my opinion, the fact that appropriations are for educational purposes simply does not exclude the appropriations, as a matter of law, from also being for the ordinary expenses of state government. Under my views in this case, I would allow appropriations for the ordinary expenses of state government to be made in the general appropriation bill funded out of the ASETF, provided the Legislature has determined them to be for "educational purposes" as that term is defined by this Court.
I would affirm the trial court's holding that appropriations from the Alabama Special Education Trust Fund must be for educational purposes, but I would reverse its holding that the only appropriations for educational purposes that can be made in a general appropriation bill are those for the "public schools." Therefore, I would remand this case for an appropriate determination of whether the appropriations to the agencies funded from the ASETF were for "educational purposes" as that phrase is defined herein.
NOTES
[1] Except for the taxes on telegraph businesses and "other mines, quarries, and sand and gravel pits."
[2] Except for those on coal mines and sleeping car companies.
[3] The cigar and cigarette tax was originally called a license tax, see 1935 Ala. Acts No. 194, sched. 159, p. 530, but is now divided into a sales tax, Ala.Code 1975, § 40-25-1 et seq., and a use tax, § 40-25-40 et seq.
[1] The Court was also split on the question of whether "dues check-offs" were germane to appropriations.
[2] "Ordinary expenses of state government" is shorthand for the entire phrase, because all power of the state is vested in the executive, legislative, and judicial departments, see § 42, Constitution of Alabama of 1901. If appropriations can be made to those branches, they can be made to any part of the state government.